[No. 4148–II.   Division Two.   January 15, 1981.]

STEPHEN HAYDEN, ET AL, *Appellants,* v. THE CITY OF PORT TOWNSEND, ET AL, *Respondents.*

*J. R. Aramburu,* for appellants.

*Glenn Abraham* and *Stanley A. Taylor,* for respondents.

PEARSON, A.C.J.—This is an appeal from a superior court order affirming the Port Townsend City Council's approval of a rezoning application. We find that the city planning commission violated the appearance of fairness doctrine in processing this application, and therefore we hold the zoning decision invalid.

In May 1977, William Short applied to the City of Port Townsend to have his undeveloped land rezoned from a quasi–public use zone called P–1 to a general commercial use zone. When he made this application, Mr. Short had already granted to Port Angeles Savings and Loan Association an option to purchase his land. The bank was interested in constructing a building to house its Port Townsend office on the land, and had indicated it would exercise its option if the land were successfully rezoned.

In September 1977, the city planning commission held a hearing on Mr. Short's application for rezoning and later recommended to the city council that it be granted. Charles Marsh, the local branch manager for the bank, acted as chairman of the planning commission during this public hearing and voted to approve the rezoning.

In November 1977, the city council held a public hearing on the rezoning application. Mr. Marsh spoke in favor of the application at this hearing. The city council voted to rezone the land. Thereafter, the bank exercised its option to purchase the land.

Several months later, in February 1978, a question was raised about the possibility of a violation of the appearance of fairness doctrine in processing the Short rezoning application. On advice from the city attorney, the city council rescinded its approval of the rezoning and remanded the matter to the planning commission for a "corrected hearing." Mr. Marsh, who was still chairman of the planning commission, announced that he would step down from his

chairmanship for purposes of the hearing on the Short rezoning only. He then moved down to the audience and announced that he was now acting as Mr. Short's agent. Mr. Marsh commented extensively on both the substance of the application and the proper procedure to use in conducting the hearing. In fact, he questioned witnesses and advised the acting chairman that a chairman could vote for the proposed rezoning if he so desired. The planning commission voted to recommend acceptance of the zoning change.

The city council once again considered the matter in June 1978. Mr. Marsh was present, acting, he stated, on behalf of Mr. Short and the bank. When plaintiff Robert DeWeese questioned Mr. Marsh's participation, the city attorney indicated Mr. Marsh could address the council as a private citizen. Mr. Marsh did so at some length, including a discussion of his actions in filling out an environmental checklist for the rezoning and obtaining a declaration of nonsignificance covering it. Following the hearing, the city council adopted the proposed rezoning. Though it did not make formal findings of fact, the council did make some recitations of fact in the minutes of the meeting and in the amendatory ordinance, and also concluded that the rezoning was in the public interest.

The plaintiffs then sought and obtained a writ of certiorari from the Superior Court. However, after reviewing the record of the City proceedings on the rezoning, the Superior Court declined to reverse the city council's decision.

On appeal, the plaintiffs raise two major issues. The first of these has to do with the adequacy of the findings of fact and conclusions of law entered by the city council in support of its action.[1] We find no error in the approval of these findings and conclusions by the Superior Court.

---

[1] From the record, it appears the city council found that (1) the rezone request was in compliance with the city comprehensive plan, and the property abuts an existing commercial area; (2) the rezone was in the public, as opposed to a purely private, interest; and (3) traffic considerations had been addressed adequately.

■ The requirement that a city council make findings of fact and conclusions of law in rezoning cases was first stated in *Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978). This opinion became final only a few months before the second city council action in the present case. In deciding whether the findings and conclusions are sufficient, we look to the apparent purpose of the rule in *Parkridge v. Seattle, supra.* A reading of the opinion discloses that the Supreme Court was imposing a requirement that a court reviewing a rezoning case have available to it a verbatim record of elements the council considered, and an indication, by means of findings and conclusions, of the process used by the council to resolve factual disputes. This is the general purpose of findings of fact. *See* CR 52(a)(1).

In the present case, the council's findings, while minimal, are sufficient. They do address and resolve the factual disputes raised in the hearing. While more extensive findings, made in a more formal form, would be more useful, the findings made by the council in this case are sufficient. No particular formality is expressly mandated by the *Parkridge* rule, *see South of Sunnyside Neighborhood League v. Board of Comm'rs,* 280 Ore. 3, 569 P.2d 1063 (1977), and too much formality would unduly complicate zoning matters.

Though the findings of fact and conclusions of law made in this case are sufficient, they do represent the minimum necessary to comply with the rule in *Parkridge.* We would suggest entry in the future of findings of fact which more adequately state and resolve the factual disputes, and conclusions of law which resolve all the legal disputes. *See, e.g.,* CR 52.

■ The second major issue raised by the parties has to do with the appearance of fairness doctrine. In our view, that doctrine requires that we reverse the trial court and find that the city council and planning commission actions were invalid. It is beyond dispute that in considering a rezoning application the planning commission and city council are acting in a quasi–judicial capacity. *E.g., South*

*Capitol Neighborhood Ass'n v. Olympia,* 23 Wn. App. 260, 595 P.2d 58 (1979). The appearance of fairness doctrine, as it has developed, has consistently been applied to quasi-judicial land use decisions. The doctrine appears to have first evolved in this context. *Smith v. Skagit County,* 75 Wn.2d 715, 453 P.2d 832 (1969). The core of the doctrine announced in *Smith* and repeated often is that hearings to which the doctrine applies must not only be fair in fact, but must appear to be fair and to be free of an aura of partiality, impropriety, conflict of interest, or prejudgment. *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971). As the Supreme Court pointed out in *Chrobuck,* the nature of the zoning process warrants considerable effort to protect it from an appearance of impropriety.

As it has developed, the appearance of fairness doctrine has been applied not only to cases where actual conflict of interest is demonstrated, but also to situations where a conflict of interest *may* have affected an administrative action. The doctrine reaches the appearance of impropriety, not just its actual presence. *Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972). The apparent benefit from the rezone application need not even inure directly to a commission member. It is enough that the member's employer receive an undeniable major benefit. *Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 526 P.2d 897 (1974).

In the present case, the record forces us to conclude that the appearance of fairness doctrine has been violated and that the City's efforts to remedy the violation through a second hearing process were not sufficient. Mr. Marsh's employer, Port Angeles Savings and Loan, clearly was substantially benefited by the rezoning granted in this case. The bank exercised its option to purchase the property only after the rezone was approved. While he did not participate of record as chairman of the planning commission during the second planning commission hearing, Mr. Marsh was unquestionably active in supporting the rezoning application. The record reflects that Mr. Marsh prepared an environmental checklist in connection with the

rezoning, actively answered questions about it, and sought to obtain the declaration of nonsignificance that was finally issued by the City. At the second planning commission hearing and again at the second city council hearing, Mr. Marsh actively supported the rezoning application. In fact, Mr. Marsh was allowed by the planning commission to question other speakers, a privilege not accorded to any opponent of the rezoning or to anyone else. Further, at the second planning commission hearing, Mr. Marsh offered procedural advice to the temporary chairman. While we do not intend to suggest that Mr. Marsh acted from any corrupt motive, we believe that any neutral observer, after considering this record, would be compelled to conclude that there exists the appearance of an action taken in part because the applicant for the rezoning had an unfair advantage in obtaining access to the decision makers. In such a case, the action must be voided. *Swift v. Island County,* 87 Wn.2d 348, 552 P.2d 175 (1976). In our view, the appearance of fairness requires that when a board member or his employer is directly interested in the outcome, the member abstain not only from voting but from participation in the hearing and decision–making process.

We recognize that our decision may make it more difficult to recruit qualified persons to serve on planning commissions or rezoning boards. However, we do not perceive this problem to be one that will recur often. The number of cases any one board member will be unable to participate in will no doubt be relatively limited. Second, and more important, we perceive the benefits to be gained from public assurance that actions are taken in a fair way outweigh the detriment which may flow from the rule we set forth here.

We are also mindful of the argument that the rule we pronounce will limit the freedom of action of persons who serve on boards or commissions that make quasi–judicial determinations. Judges and other persons acting in judicial roles, of course, have long been so limited. *See* CJC 2 and 3, and the Preamble to the Code of Judicial Conduct. As the

Supreme Court stated in *Save a Valuable Environment v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978), the doctrine prevents the presentation of views by public officials acting even in their private capacity in order to advance the goal of assuring public confidence in the fairness of the quasi-judicial decision–making process. Any limitations on the actions of public officials are voluntarily undertaken when the particular official assumes a position of public trust.

Because of the violation of the appearance of fairness which occurred in this case, we must reverse the Superior Court's judgment. The rezoning decision appealed from is invalid.

Reversed.

PETRIE and PETRICH, JJ., concur.