[Nos. 52157–3, 52449–1.   En Banc.   January 8, 1987.]

ROBERT K. ALGER, ET AL, *Appellants,* v. THE CITY
OF MUKILTEO, *Respondent.*

*Derrill T. Bastian* and *Philip N. Bastian,* for appellants.

*Hackett, Beecher, Hart, Branom, Vavrichek & Drury,* *John A. Hackett,* and *K. C. Webster,* for respondent.

DORE, J.—At the end of 1978, the Algers purchased unimproved property in Mukilteo zoned as single family residential. The Algers planned on building a large condominium project on the land, and wanted the City of Mukilteo to rezone the land accordingly. On September 8, 1980, the Mukilteo Planning Commission, in a taped hearing, approved of the rezone, after a heated debate with a group opposed to the rezone, the Mukilteo Improvement Association. This rezone approval had to be ratified by the Mukilteo City Council.

A few days after this hearing, two members of the Mukilteo Improvement Association checked out the only copy of the tape of the proceedings. Shortly thereafter, they reported that there was a 90–minute gap in the tape, allegedly caused by faulty operation of the tape recorder during the proceeding. Nevertheless, despite the existence of this gap, the city council approved the planning commission's recommendations for rezone, by enacting ordinance 347.

The Mukilteo Improvement Association challenged ordinance 347 by writ of certiorari to the Superior Court on the basis of the gap in the record. The Superior Court ruled ordinance 347 invalid. No formal entry of its order was entered until 1985, although during all subsequent proceedings both sides assumed that it was invalid. The Algers

did not appeal the superior court ruling. The Algers, in effect, had to start over and reapply for a rezone of their property.

The planning commission again approved the subject rezone for a somewhat smaller condominium project in May 1981. The city council also approved the commission's rezone by passing ordinance 372. The Mayor, who had publicly supported the condominium project, presided over the council meeting. The Mukilteo Improvement Association challenged this ordinance for violation of the appearance of fairness doctrine based on the Mayor's participation. The Superior Court agreed, and declared the second rezone ordinance invalid. While the propriety of this ruling is not before us, it is interesting to note that the council had also publicly supported a similar condominium project when it passed the first rezone ordinance. However, the Algers accepted the superior court ruling, and did not appeal. If they had appealed and prevailed, they would have had the necessary rezone to build the condominiums.

Before another rezone application could be filed, elections were held which placed key Mukilteo Improvement Association members on the Mukilteo City Council. Faced with this opposition the Algers decided against proceeding with their condominium project and instead, attempted to get the necessary permits to build six residential houses on the subject land. The Algers, however, never succeeded in this project. The City issued certain permits allowing for tree cutting, road construction, and sewer hookups only to revoke the permits on the Mayor's direction shortly thereafter. The Director of Public Works for the City saw no reason to revoke the permits, and reinstated them a few days later. Approximately 2 months later, the City reclassified one of the streets leading to the Algers' property as an alley, which prevented more than one home from being built on the property. The City subsequently revoked the remaining outstanding permits as being erroneously issued.

## Lawsuits

The Algers filed a complaint against the City listing three separate causes of action. The first cause related to the negligent operation of the tape recorder which resulted in the first rezone application's being dismissed. The second action dealt with the City's alleged negligence in conducting a hearing which was invalidated for violation of the appearance of fairness doctrine. The final cause of action asserted that the City negligently issued permits which the City later revoked.

The City moved for summary judgment on all three causes of action, but only obtained a dismissal of the second cause relating to the appearance of fairness. The Algers successfully moved for partial summary judgment on the first issue, claiming that the City had a duty to keep a verbatim transcript of the planning commission proceedings.

The jury awarded the plaintiffs over $1.5 million on its first cause of action and almost $1.4 million for the third cause of action. The City moved for a judgment n.o.v. and a new trial. The judge denied the motion for judgment n.o.v., but granted a new trial unless the Algers accepted a reduction of the verdict to $500,000. The Algers refused and the court entered an order for a new trial.

The Algers have appealed here. The Algers also appeal the trial court's dismissal of their original second cause of action dealing with the city council's second rezone hearing which violated the appearance of fairness doctrine. The City cross–appeals arguing that the trial court erred in denying the City's motion for summary judgment on the first and third causes of action.

## Consolidated Appeal

Finally, the City of Mukilteo recently brought a motion under CR 60 to give an additional ground for the court to vacate the Algers' verdict. Namely, the City has asserted that the verdict was premised on an invalid belief on the part of all parties that Mukilteo ordinance 347 was void. This ordinance, which rezoned the property, had been

declared void because of the 90–minute gap in the planning commission proceedings. However, no formal written order was issued until last year. The trial court denied this motion and the City has appealed. We affirm the trial court, as the record is abundantly clear that all parties to this action understood and agreed that ordinance 347 was invalid and that no formal order would be necessary to invalidate such ordinance at time of trial.

### NEGLIGENT OPERATION OF THE TAPE RECORDER

In order to establish a cause of action in negligence for failure to maintain a verbatim record of the planning commission's hearing, the Algers must establish: (1) the existence of a duty owed to the Algers by the City, (2) a breach of that duty, (3) a resulting injury, and (4) a proximate cause between the claimed breach and resulting injury. *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984); *Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 632 P.2d 504 (1981). The City argues, despite a partial summary judgment to the contrary, that it did not owe the Algers a duty to keep an accurate record of the planning commission's hearing.

A determination of proximate cause is generally a question of fact, although with undisputed facts the question may become a determination of law. *France v. Peck,* 71 Wn.2d 592, 430 P.2d 513 (1967). Here, the results of whatever negligence the City committed are not disputed. The Algers had to apply for another rezone of their property, which again was granted by the planning commission and the Mukilteo City Council.

The Algers claim that the negligent handling of the tape "opened the door" for further acts of the City which exacerbated their injuries. Brief of Appellant, at 69. We disagree. In order to meet the requirement of proximate cause in a negligence case, the negligent conduct must cause in a direct sequence, unbroken by any independent cause, the injury complained of. *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985); *King v. Seattle,* 84 Wn.2d 239, 249,

525 P.2d 228 (1974); *see also* WPI 15.01. In this case this requirement is not met. The original planning commission's decision did not give the Algers any vested rights, and the only damage the Algers suffered was that a new planning commission hearing was required. Their land had not increased in value because of the void rezone ordinance, and it was only the subsequent alleged tortious conduct on the part of the City that could account for the injuries the Algers claim to have suffered. The City's subsequent conduct is an independent cause, which is included in the Algers' third cause of action.

Furthermore, we note that the City, after failing to keep an accurate report of the planning commission's hearing, did grant the Algers' proposed rezone. Ordinance 347, which was subsequently declared invalid, allowed the Algers to build their proposed condominiums. At this point, the City was not deliberately thwarting the Algers' proposed developments. The City was sympathetic to the Algers' efforts to rezone the property, and no liability should attach for its efforts, especially since the Algers at no point appealed the superior court order invalidating the rezone. We therefore hold that plaintiffs' first cause of action for the City's negligent operation of the tape recorder did not proximately cause the Algers' damages and should be dismissed.

Another compelling reason for the dismissal of the first cause of action is that the Algers failed to appeal the superior court order invalidating ordinance 347. Had the Algers appealed, they might have had the appellate court reinstate the condominium rezone. Because they failed to bring an appeal, they waived all rights to challenge the procedures surrounding the ordinance, as any such challenge would be premature.

### THE APPEARANCE OF FAIRNESS CAUSE OF ACTION

The Algers claim that the City is liable for its alleged negligence in passing an ordinance which later was invalidated for violation of the appearance of fairness doctrine.

We agree with the trial court that the Algers failed to state a proper cause of action and that the trial court properly dismissed this claim.

■ The appearance of fairness doctrine requires that quasi–judicial land use decisions, such as rezones, must be fair, and appear to be fair, in order to be valid. The nature of the zoning process, which requires local decisions regulating and restricting the use of property, requires confidence that the processes bringing about such regulation are fair and equitable. *Chrobuck v. Snohomish Cy.*, 78 Wn.2d 858, 480 P.2d 489 (1971); *Hayden v. Port Townsend*, 28 Wn. App. 192, 622 P.2d 1291 (1981). The remedy for an ordinance passed in violation of the appearance of fairness doctrine is to void the ordinance. *Swift v. Island Cy.*, 87 Wn.2d 348, 552 P.2d 175 (1976). It has never been suggested that the government entity would be liable in tort for holding a meeting which violates this doctrine.

Furthermore, even if the violation of this doctrine did constitute a breach of a duty to the Algers, the Algers would not be able to show any resulting injury from the City's alleged negligence. A void rezone ordinance does not give the Algers any vested rights, and the record is abundantly clear that the Algers at no point relied on the improperly enacted rezone ordinance. The Algers' subsequent abandonment of the condominium project was not proximately caused by the failure of the City to enact a valid ordinance. Furthermore the Algers did not appeal the order invalidating the rezone ordinance, which if successful would have obviated any need for a new application.

It should again be noted that at this time the City was not attempting to prevent the Algers from developing their property. Ordinance 372 again was enacted to permit construction of some condominiums, and was the result of action by a sympathetic mayor and city council attempting to allow the condominium development. Again, the Algers failed to appeal the trial court's invalidation of ordinance 372, and again, it was this failure to appeal rather than the deliberate acts of the City which prevented the rezone. It

was only after the enactment of this ordinance and subsequent election of a hostile mayor that the City actively attempted to block the project. Thus, the Algers cannot establish a proximate link between the invalid enactment of ordinance 372 and their damages. The trial court, therefore, properly dismissed their second cause of action.

## IMPROPER ISSUANCE OF PERMITS

The Algers brought as their third cause of action the City's improper issuance and revocation of various permits, which effectively prevented the Algers from constructing six houses on their property. This cause of action differs from the first two previously described, as the land was properly zoned to build these houses, and but for the flagrant misuse of government authority, the Algers would have been able to build the units. The jury awarded the Algers almost $1.4 million on this cause of action, but the judge ordered a new trial unless the Algers accepted a reduction of the verdict for this claim to $400,000. The Algers refused, and the judge ordered a new trial.

As a preliminary matter, we agree with the judge's decision to submit the third cause of action to the jury. The facts of this case unequivocally show that the city officials actively prevented development of the Algers' property through reprehensible misuse of governmental power they wielded.

For example, on March 18, 1982, when Mr. Alger was cutting brush and trees on his property pursuant to a valid tree–cutting permit, the Mayor arrived and told Mr. Alger he had had enough of the Algers' project. The Director of Public Works, Archie Brown, testified that the following events took place:

Q (By Mr. Bastian [counsel for appellants]) Now, what happened then on the 18th? What time of day were you called up to [the Algers'] property?
A [Mr. Brown] It was the evening.
Q Can you give us any idea of what time in the evening?
A I'm going to say 7:00 o'clock, 6:30, 7:00 o'clock,

somewhere about there.

Q And who called you?

A The Mayor did, . . .

Q And what did he say to you?

A He asked me to come up there; that they were having difficulties on the project site.

Q And had you been up there previously that day?

A I believe so, yes.

Q And what was the purpose of going up there, specifically, that day?

A To inspect to see what they were doing.

Q And when you went up there to inspect, what did you find out?

A I found grading, I believe, with some dirt around. Knocked some trees down.

Q Did you see them in any way violating the terms of the permit that had been issued?

A No. Otherwise, they would have been stopped then.

Q So, the activities that were going on when you were up there were all conditions of the terms of the permit?

A Yes, sir.

Verbatim Report of Proceedings, at 458–59.

Q [By Mr. Bastian] So that it was your understanding that the Mayor instructed you to withdraw every permit that he had?

A [Archie Brown] Yes.

Q And, did he give you any reasons why?

A No.

Q Was there anything about the work that Rob [Mr. Alger] was doing on the project that would give you any indication that he had violated anything or any of the permits as the reason for withdrawing?

A Not that I was aware of.

Q And you had inspected it that day?

A Yes.

. . .

Q Did [the Mayor] make any statement at the time that would give you any indication why he was [revoking the permits]?

A No. [The Mayor] was rather cruel about the situation and just walked away and said, "Revoke them."

Verbatim Report of Proceedings, at 461–62. The City's attorney and Mr. Brown reissued the permits a few days

later. Shortly thereafter, the Algers applied for a sewer permit, and Mr. Brown testified that the following conversation took place with the Mayor:

Q [By Mr. Bastian] . . . did you then have occasion to talk with [the Mayor] about the status of this permit and whether or not it ought to be issued?
A [Archie Brown] Yes, I did.
Q Do you recall where the conversation took place?
A Yes, I do.
Q Where did it take place?
A It was in the hallway at City Hall, and outside because we were walking in that general direction. And I explained to him that we had the Alger—and we had three other—two others that were waiting for DOE approval. And when we received them, there was no reason why we shouldn't issue them.
Q And was there anybody else present at that conversation besides you and the Mayor?
A Not that I recall.
Q And what was the Mayor's response to your conversation?
A He told me to issue them, but leave a loophole.
Q For what purpose?
A So they could pull them later.

Verbatim Report of Proceedings, at 485–86. All of the Algers' permits were revoked 6 weeks later, when the Mayor and the city council, after giving the Algers 2 days' notice, decided to reclassify the road leading to the Algers' property as an alley rather than a street. This reclassification prevented the construction of more than one house on the land.

The large jury verdict in favor of the Algers on this cause of action, and the judge's decision not to grant a judgment n.o.v., indicate that both the jury and the judge believed the City's conduct to be reprehensible and actionable. The question remains, however, whether the amount of the jury verdict should have been sustained, or whether the judge properly ordered a new trial.

Pursuant to CR 59(a)(5), a trial court judge can order a new trial if "[d]amages [are] so excessive or inadequate as

unmistakably to indicate that the verdict must have been the result of passion or prejudice". The judge must list the reasons used in making such a determination. CR 59(f). Such a decision should be overturned only for abuse of discretion, "and that a much stronger showing of an abuse of discretion will be required to set aside an order granting a new trial than one denying it." *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 437, 397 P.2d 857 (1964).

■ Nevertheless, an equally strong competing interest exists in upholding jury verdicts. The trial court should not substitute its views for those of the jury. If the jury verdict falls within a range of proven damages, it should not be set aside as excessive. *James v. Robeck,* 79 Wn.2d 864, 490 P.2d 878 (1971). Only when the trial judge, using his sound discretion, finds that the jury "had forsaken sensible thought and reached its verdict out of outrage, animosity or spite . . . should [the court] interfere with a jury verdict because of its size." *Ryan v. Westgard,* 12 Wn. App. 500, 513, 530 P.2d 687 (1975). *Bingaman v. Grays Harbor Comm'ty Hosp.,* 103 Wn.2d 831, 699 P.2d 1230 (1985).

The trial court found a number of reasons to justify overturning the verdict. They include: (1) the verdict exceeded the evidence of damages by over $1 million; finding of fact 2; (2) the award consisted of punitive damages against the City of Mukilteo; finding of fact 3; and (3) because of the way in which the plaintiffs presented the case, substantial justice was not done due to the passion and prejudice of the jury; finding of fact 4(a).

We do not believe these reasons justify the order of a new trial. The trial court's obvious concern was that a $2.9 million verdict was excessive. However, the verdict for the plaintiffs for the third cause of action was $1,369,400, which was well within the range of damages the Algers presented at trial. Furthermore, although the trial was at times emotional, we do not believe that the verdict resulted from the passion and prejudice of the jury. Rather, the City's reprehensible conduct caused the Algers large economic and emotional damages for the inability to develop their land as

it was currently zoned, and we will not usurp the jury's role in deciding the proper amount of damages. The trial judge's order of a new trial for the third cause of action is reversed, and the verdict for $1,369,400 is reinstated.

## CROSS APPEAL

The City has cross–appealed the trial court's refusal to instruct the jury that the Algers are limited to reliance damages for their third cause of action. The City cites *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 669 P.2d 468 (1983) and *Nolan v. Blackwell*, 123 Wash. 504, 212 P. 1048 (1923) for the proposition that damages for negligent issuance of permits are limited to those expenses incurred in reliance of the invalid permits. We do not read those cases so narrowly. Those cases principally dealt with whether the erroneous issuance of a permit vested the builder's right to build, not the measure of damages involved.

■ This case, on the other hand, involves the amount of damages for such negligent issue. While it is true that reliance damages are one of the most obvious damages arising from the negligent issuance of permits, the damages are not limited to that amount. *J & B Dev. Co.*, at 308. This third cause of action was for negligence, and liability attaches for damages proximately caused by that negligence. The jury obviously decided the liability extended beyond reliance damages. The cross appeal is dismissed.

## CONCLUSION

In summary, we hold that the trial court order for a new trial for the third cause of action is reversed and the jury verdict for $1,369,400 is reinstated. The cross appeal and consolidated appeal are also dismissed. Furthermore, the first and second causes of action are dismissed. Both of these causes of action arose from the Algers' failure to appeal superior court orders invalidating two rezone ordinances. Had the Algers appealed and been successful, they would have obtained the necessary rezone, and would have suffered no damages. Furthermore, the City's conduct throughout the first two rezone applications was very sym-

pathetic to the Algers, and a sympathetic mayor and city council actively supported and passed two rezone ordinances (347, 372). Subsequently a hostile mayor was elected, and he and his administrative departments outrageously interfered with the development of the Algers' property under the existing residential zoning. These actions constituted the third cause of action.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.