[No. 16026-2-III. Division Three. December 16, 1997.]

THOMAS TUGWELL, ET AL., *Plaintiffs*, THE CITY OF
ELLENSBURG, *Appellant*, v. KITTITAS COUNTY, ET AL.,
*Respondents*.

*James D. Maloney III* of *Weeks & Skala*, for appellant.

*Greg Zempel, Prosecuting Attorney*, and *James E. Hurson, Deputy*; and *Erin L. Anderson* of *Cone, Gilreath, Ellis & Cole*, for respondents.

KATO, J. — The City of Ellensburg appeals a superior court order affirming the Kittitas County Board of Commissioners' approval of Herbert and Shirley Snowden's rezoning request. The City contends the record and the Board's findings fail to support the Board's action, and irregularities in the County's planning process require reversal. We affirm.

The Snowdens own approximately 115 acres of agricultural land in Kittitas County just southwest of Ellensburg.

In 1980, the land was zoned AG-20, which is designated for agricultural use with minimum lot sizes of 20 acres. Neighboring properties to the north and east of the Snowdens' land are zoned AG-3, which is designated for agricultural and low-density residential use with minimum lot sizes of three acres.[1] Properties to the west and south of the Snowdens' land are zoned AG-20, although some of those properties have been divided into nonconforming parcels of less than 20 acres. The County's comprehensive plan designates most of the Snowdens' land as agricultural, but the far eastern portion is designated for suburban use.

In April 1994, the Snowdens applied to rezone their property from AG-20 to AG-3. Under the existing zoning designation, they could have divided their property into 10 parcels; the rezoning would permit them to create an estimated 35 residential parcels of approximately three acres each. Although no development project was proposed at the time, the County's planning department examined the potential environmental effects of a development at the site and issued a mitigated determination of nonsignificance[2] pursuant to RCW 43.21C.030(2)(c).

The County's planning commission then conducted public hearings on the Snowdens' application in August and September 1994. The planning commission recommended approval of the rezoning by a vote of three to one, with one abstention. The commission made the following findings:

1. The Kittitas County Comprehensive Plan designates a portion of the subject property as Suburban.

2. The area to the north, east, and south is characterized by smaller parcels.

3. The property is bordered on the north and east by Agriculture-3 zoning.

---

[1]Permitted uses in the two zones are identical, except for two activities not relevant to this case. The critical difference is the minimum allowable lot size.

[2]The department ordered mitigation measures to protect water quality and fish and wildlife habitat, and to reduce traffic on a public road bordering the property.

4. Technical data—including extensive financial records—submitted show this is marginal farm land.

5. The subject property has access to two main arterials.

6. Traffic generated from potential development will not result in a negative impact.

7. The Kittitas County Subdivision Code addresses small parcel irrigation systems and will alleviate irrigation concerns.

The proposal then went to the Kittitas County Board of Commissioners, which conducted another public hearing in November 1994 and received additional written comments for another month. The Board postponed action on the rezoning until August 1995 to allow a group of residents to complete its recommendations for modification of the County's comprehensive plan pursuant to the Growth Management Act, RCW 36.70A. After considering a draft version of the modification, the Board unanimously approved the rezoning, subject to various conditions, and made the following findings:

1. The Board finds that on April 13, 1994 Herb and Shirley Snowden applied for rezone of an approximately 115 acre site from Agriculture-20 zoning to Agriculture-3 zoning by submittal of a complete rezone application (file Z-94-04) with SEPA Environmental Checklist per Chapter 17.98 and Section 15.04.110 of the Kittitas County code.

2. The Board finds that the permitted uses and conditional uses within the Agriculture-20 and Agriculture-3 zones are very similar with two exceptions. The AG-20 zone lists as an additional permitted use "hay processing and container storage" (17.29.020[B]), and an additional conditional use "farm implement repair and maintenance business of a commercial nature, not to include automobiles, trucks or bikes" (17.29.030[B]).

3. The Board finds that the minimum lot size with the requested zoning district (Ag-3) is three acres; the present zoning district (Ag-20) is twenty acres with exceptions that allow some lots as small as three acres.

4. The Board finds the present zoning of the vicinity is

Agriculture-20 to the west of Umptanum Road and Agriculture-3 to the east of Umptanum Rd.; the requested rezone by the applicant is for extension of the Ag-3 zone boundary line west across Umptanum Rd. to include the subject site.

5. The Board finds that the State Environmental Policy Act (SEPA) was complied with and a Mitigated Determination of Non-Significance was filed on August 4, 1994 and appropriate Notice of Action published with the paper of record per Kittitas County Code Section 15.04.160.

The rezoning ordinance also incorporated the Planning Commission's earlier findings.

Opponents of the rezoning, including the City of Ellensburg, petitioned for judicial review pursuant to the Land Use Petition Act, RCW 36.70C. After reviewing the record, the superior court concluded in a memorandum decision that the Board's findings were adequate; that the planning commission's actions did not violate procedural requirements; that substantial evidence established there had been a substantial change in circumstances and the rezoning was in the interest of public health, safety, morals, and welfare; and that the rezoning did not conflict with the Growth Management Act. The court entered an order affirming the rezoning. The City appeals this order.

■ Judicial review of a rezoning decision is governed by RCW 36.70C.130,[3] which provides:

(1) The superior court, acting without a jury, shall review the record and such supplemental evidence as is permitted under RCW 36.70C.120. The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

---

[3]The statute was enacted in 1995. *See* LAWS OF 1995, ch. 347, § 714. It became effective on July 23, 1995, before the Board's action on August 15, 1995.

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

(2) In order to grant relief under this chapter, it is not necessary for the court to find that the local jurisdiction engaged in arbitrary and capricious conduct. A grant of relief by itself may not be deemed to establish liability for monetary damages or compensation.

The City first contends the planning commission violated RCW 36.70.600[4] and RCW 36.70.610.[5] We need not resolve these issues for two reasons.

█ First, RCW 36.70C is the exclusive means of obtaining judicial review of land use decisions. RCW 36.70C.030. A land use decision is defined as "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination . . . ." RCW 36.70C.020(1). The planning commission is not Kittitas County's body with the highest level of authority on rezoning matters, so its recommendation in this case is not a land use decision subject to review under RCW 36.70C.

---

[4]The planning commission's recommendation "shall be by the affirmative vote of not less than a majority of the total members of the commission." RCW 36.70.600. It is undisputed that the Kittitas County Planning Commission has seven members. Only three of the Commission's members voted in favor of the Snowdens' rezoning request.

[5]When making its recommendation, a planning commission is required to include "a statement setting forth the factors considered at the hearing, and analysis of findings considered by the commission to be controlling." RCW 36.70.610. The City contends the Planning Commission failed to include the required statement.

8

■ Second, even if the planning commission's action were reviewable under RCW 36.70C, the appropriate standard requires the court to determine whether the planning commission "engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless." RCW 36.70C.130(1)(a). Any procedural errors by the planning commission in this case were harmless, because its recommendation was merely advisory and the Board retained authority to make the final determination. RCW 36.70.650.

■ ■ The City also contends the rezoning was not supported by substantial evidence. In Washington, a rezoning proponent must show a substantial change in circumstances since the original zoning or amendment,[6] and must show that the rezoning bears a substantial relationship to the public health, safety, morals, or general welfare. *Bassani v. Board of County Comm'rs*, 70 Wn. App. 389, 394, 853 P.2d 945, *review denied*, 122 Wn.2d 1027 (1993). Whether an application for rezoning complies with a comprehensive plan is not determinative; only "general conformance" with the comprehensive plan is required. *Cathcart-Maltby-Clearview Community Council v. Snohomish County*, 96 Wn.2d 201, 212, 634 P.2d 853 (1981).

■ Several factors are relevant to the question whether there has been a substantial change of circumstances, including changes in public opinion, in land use patterns,

---

[6]The Snowdens point out that a demonstration of changed circumstances is not required if the rezoning is consistent with an adopted comprehensive plan. *Save Our Rural Environment v. Snohomish County*, 99 Wn.2d 363, 370-71, 662 P.2d 816 (1983) (SORE); *Bjarnson v. Kitsap County*, 78 Wn. App. 840, 845-46, 899 P.2d 1290 (1995). The parties appear to agree here that the AG-3 zoning is consistent with the suburban use designation in Kittitas County's comprehensive plan. The *SORE* principle therefore applies to the far easternmost portion of the Snowdens' land that is designated for suburban use. The City contends this principle applies only if the comprehensive plan is newly adopted or amended. However, the reasoning adopted by the Supreme Court in *SORE* was that if changed circumstances always were required, the policies of a comprehensive plan would never be fulfilled. *SORE*, 99 Wn.2d at 370. This reasoning would apply regardless of whether the comprehensive plan was newly adopted or amended. At any rate, because only a small portion of the Snowdens' property was designated for suburban use in the comprehensive plan, it is unnecessary for us to resolve this issue here.

and in the property itself. *Bjarnson v. Kitsap County*, 78 Wn. App. 840, 846-47, 899 P.2d 1290 (1995). In support of their application, the Snowdens submitted a map demonstrating that their property was virtually surrounded by parcels of less than 20 acres. Many of these parcels are to the north and east of the Snowdens' property, and thus are conforming uses in the AG-3 zone. However, several small parcels, including two to the south of less than three acres, are nonconforming lots in the AG-20 zone. The Snowdens also submitted information obtained from the assessor's office indicating many of these small parcels had been created since their property was zoned in 1980. This information alone is evidence that since 1980 the area generally has been divided into small rural lots, notwithstanding the AG-20 zoning to the west and south of the Snowdens' property.

The City contends that despite the parcelization of the neighboring property, there has not been a significant change of land *use* in the area since 1980. To demonstrate this, opponents submitted aerial slides that show little increase in the number of houses in the area. But as the County's planning director pointed out, each of the lots is at least a potential building site. The creation of small parcels, not large enough to accommodate agricultural activities, certainly demonstrates a trend toward residential development. The Snowdens provided proof of a substantial change in circumstances since their property was zoned in 1980.

■ The City relies heavily on what it claims is a lack of evidence that public opinion or the circumstances on the Snowdens' own property had changed since 1980. It is true that a majority of the speakers at the public hearings opposed the rezoning. However, neighborhood opposition alone may not be the basis of a land use decision. *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 797, 903 P.2d 986 (1995); *Indian Trail Property Owner's Ass'n v. City of Spokane*, 76 Wn. App. 430, 439, 886 P.2d 209 (1994). And while the Snowdens' use of their

property apparently had not changed since 1980, the changing character of the neighboring property had an effect on their farm, such as increasing liability insurance costs and traffic. In light of the whole record before the court, there is substantial evidence that the circumstances had changed to support the rezoning.

There also was substantial evidence that the rezoning was in the interest of the public health, safety, morals, or general welfare. A "fundamental objective" of the County's 1993 comprehensive plan is "to preserve the agricultural base of the County and to conserve farmland by curtailing the haphazard pattern of suburban development." Among the policies of the plan is:

> Non-agricultural development of farmlands in Kittitas County should be limited to suburban areas already partially subdivided and/or developed and to areas which, by virtue of size, slope or soil characteristics, are poorly suited to farming.

The comprehensive plan also notes:

> The policy with regard to development in the Agricultural districts should not be interpreted to preclude all further development in these areas. The possibilities and benefits of satellite or cluster residential developments located on land poorly suited to agricultural use, due to size, slope or soil characteristics, should be considered.

In support of their application, the Snowdens submitted soil and agronomic studies and an economic evaluation of their property. An agricultural economist concluded:

> Given its relatively small (115 acre) size, its shallow, rocky soils, and its patchwork of small fields, the Snowdens' Farm has been a marginal operation for quite some time. During the past four years it has operated at a net loss. This loss is in part a result of low yields which result from the marginal soils and a water supply system which is not highly reliable. The loss is also a result of higher than average costs of operation. These high operating costs reflect both the inefficiencies associated with the small size of the farm, but they also are increased by the conflicts associated with the proliferation of

small sized rural housing (A-3) plots in the surrounding area. The difficulty of managing the farm has also been increased thereby.

In light of this evidence that the property was poorly suited for agricultural use coupled with the County's policy favoring this type of property for residential development, the Board properly concluded the rezoning was in the public's interest.

■ ■ The City nevertheless contends that the Board was required to consider various other potential effects of the Snowdens' anticipated development. It claims the Board should have considered the cumulative impact of this and two other rezoning applications apparently involving property in the area. And it asserts the Board failed to consider the potential impact on the City's facilities and services or on the small school district in which the property lies. The authority on which the City relies does not require consideration of the potential cumulative effect of proposed rezonings. *See Skagit County v. Department of Ecology*, 93 Wn.2d 742, 613 P.2d 115 (1980). That case merely holds that the Shorelines Hearings Board did not act arbitrarily and capriciously by considering the cumulative detrimental effect of piecemeal development. *Id.* at 749-50.

More importantly, the City's argument misperceives the nature of the Board's action. The Snowdens applied for a *rezoning*, not approval of a subdivision. If and when the Snowdens begin the development process, their plans will be subject to, among other potential regulations, the subdivision requirements of RCW 58.17.110(1):

> The city, town, or county legislative body shall inquire into the public use and interest proposed to be served by the establishment of the subdivision and dedication. It shall determine: (a) If appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets or roads, alleys, other public ways, transit stops, potable water supplies, sanitary wastes, parks and recreation, playgrounds, schools and schoolgrounds,

and shall consider all other relevant facts, including sidewalks and other planning features that assure safe walking conditions for students who only walk to and from school; and (b) whether the public interest will be served by the subdivision and dedication.

Although much of the public debate over this rezoning related to the potential effects of development of the property, any rational consideration would refer to the precise development proposed. Examination of the potential impacts at this point necessarily would be speculative. While the City would prefer that the court consider them now, there is simply nothing to consider, because there are no specific plans to review and the impacts therefore are unknown.

Substantial evidence supports the Board's decision to approve the rezoning.

Finally, the City contends the Board's findings were insufficient. RCW 36.70.630 provides:

**Official controls — Board to conduct hearing, adopt findings prior to incorporating changes in recommended control.** If after considering the matter at a public meeting as provided in RCW 36.70.620 the board deems a change in the recommendations of the planning agency to be necessary, the change shall not be incorporated in the recommended control until the board shall conduct its own public hearing, giving notice thereof as provided in RCW 36.70.590, and it shall adopt its own findings of fact and statement setting forth the factors considered at the hearing and its own analysis of findings considered by it to be controlling.[7]

 Without reference to this statute, Washington cases have held that, to permit a full and complete review, rezoning decisions must be accompanied by findings of fact and conclusions or reasons for the action. *Parkridge v. City of Seattle*, 89 Wn.2d 454, 463-64, 573 P.2d 359 (1978); *Johnson*

---

[7]The parties apparently agree that, by imposing additional conditions for the rezoning, the Board made a change in the planning commission's recommendation. Neither the Snowdens nor the County contends the statute does not apply.

*v. City of Mount Vernon*, 37 Wn. App. 214, 219-20, 679 P.2d 405 (1984). Those decisions apparently rested on the conclusion that failure to include findings and conclusions was arbitrary and capricious. *See Johnson*, 37 Wn. App. at 219. But relief from a land use decision is no longer dependent on a judicial conclusion that the decision was arbitrary and capricious. RCW 36.70C.130(2). The appropriate standard of review is contained in RCW 36.70C.130(1)(a), under which we must determine whether "[t]he body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless." Under this standard, the initial inquiry here is whether the Board violated RCW 36.70.630, and, if so, whether the violation was harmless.

The Board certainly made findings, in addition to incorporating the planning commission's findings. The Board's ordinance, however, failed to include a "statement setting forth the factors considered at the hearing and its own analysis of findings considered by it to be controlling," as required by RCW 36.70.630.

But the Board's findings clearly imply its conclusions on the major issues involved: whether there was a substantial change in circumstances and whether the rezoning bore a substantial relationship to the public health, safety, morals, or general welfare. Specifically, the planning commission's finding No. 2 ("The area to the north, east, and south is characterized by smaller parcels.") implies the commission and the Board agreed the ownership patterns of the nearby property had changed substantially. And the commission's finding No. 4 (The Snowdens' property is "marginal farm land.") implies that the property is appropriate for residential development and the rezoning thus is consistent with the policies of the County's comprehensive plan. Moreover, various other findings and conditions imposed suggest the Board considered the public's health, safety and welfare, by addressing traffic, water and sewage concerns, and by requiring "sincere and meaningful negotiations" with fire and school districts.

14

It thus appears the Board's failure, while technically a violation of RCW 36.70.630, was harmless. Nothing would be accomplished, other than further delay, by remanding the Board's decision for entry of more complete findings and conclusions.[8] The technical violation was harmless.

A final consideration, under the authority of *Parkridge* and *Johnson*, is whether the Board's findings are so incomplete that they prevent meaningful judicial review. In *Hayden v. City of Port Townsend*, 28 Wn. App. 192, 194, 622 P.2d 1291 (1981), the city council failed to adopt formal findings of fact, but made some formal recitations of fact in the meeting minutes and in the amendatory ordinance, and concluded the rezoning was in the public interest. The court held:

> [T]he council's findings, while minimal, are sufficient. They do address and resolve the factual disputes raised in the hearing. While more extensive findings, made in a more formal form, would be more useful, the findings made by the council in this case are sufficient. No particular formality is expressly mandated by the *Parkridge* rule, *see South of Sunnyside Neighborhood League v. Board of Comm'rs*, 280 Ore. 3, 569 P.2d 1063 (1977), and too much formality would unduly complicate zoning matters.

*Hayden*, 28 Wn. App. at 195. Like the findings in *Hayden*, the findings here addressed and resolved the factual issues before the Board. Most importantly, they are not so vague and incomplete that they preclude full and complete judicial review.

The authority on which the City relies is distinguishable. *See Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 873 P.2d 498 (1994). In that case, the hearing officer's decision consisted almost entirely of a summary of the evidence presented, "without any guidance as to how issues involving disputed evidence were resolved . . . ." *Id.* at 36. The

---

[8]The City urges us to *reverse* the Board's decision, which is one of the remedies authorized by RCW 36.70C.140. However, in light of our conclusion that the rezoning was supported by substantial evidence, there is no ground for reversal.

Board's findings in this case, by contrast, impliedly but clearly resolved the issues involved. There is no basis for reversing the rezoning on this basis.

■ The Snowdens and the County seek attorney fees pursuant to RCW 4.84.370, which provides:

(1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of *a decision by a county, city, or town to issue, condition, or deny a development permit* involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

(a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and

(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

(2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.

(Emphasis added.) This provision was enacted as part of the Land Use Petition Act. *See* LAWS OF 1995, ch. 347, § 718. That statute does not define the phrase "development permit" in subsection (1). This case involves a rezoning, not a development permit, so RCW 4.84.370 is inapplicable. The requests for attorney fees are denied.

Affirmed.

KURTZ and BROWN, JJ., concur.

Reconsideration denied February 10, 1998.