[No. 13288–5–II.  Division Two.  March 18, 1991.]

TOM BELCHER, ET AL, *Appellants,* v. KITSAP COUNTY, ET AL, *Respondents.*

*Mary B. Killian* and *Hiscock & Barclay*, for appellants.

*C. Danny Clem, Prosecuting Attorney,* and *Douglas B. Fortner, Deputy,* for respondents.

WORSWICK, C.J.—We affirm the Kitsap County Board of County Commissioners' denial of Tom and Ann Belcher's application for a rezone and preliminary planned unit development.

The Belchers owned a 10–acre parcel in central Kitsap County that was zoned R–3 (three units per acre) at the time of the application. The area in which the property was located had a "Semi–Urban" designation under the Central Kitsap Comprehensive Plan. The Belchers sought rezone to R–18 so they could build 180 multi–family units on the property. Immediately adjacent properties were zoned R–3 and R–5. Most property with densities greater than R–5 were on the far side of an arterial near the Belchers' property. Fairgrounds Road, on which the Belchers' property is located, is heavily traveled and is particularly congested at certain times of the day, especially during events at the county fairgrounds.

The County Department of Community Development issued a declaration of nonsignificance pursuant to WAC 197–11–340, and it recommended approval of the application, subject to nine conditions. The hearing examiner heard the Belchers' engineer testify in favor of the project and also received testimony from 25 citizens opposed to the project; many were residents of the area.

The hearing examiner entered findings of fact and conclusions of law, recommending denial of the rezone request. The Belchers "appealed"[1] to the Board of County Commissioners, which conducted a hearing on the application and

---

[1]The pertinent Kitsap County Ordinance, KCO 100.6.e(4), gives the hearing examiner's decision the effect of recommendation only with automatic transfer of the matter to the commissioners for decision. Technically, therefore, the Belchers were not appealing the recommendation, but even the Board seems to refer to the procedure as an "appeal."

established a period during which written comments could be submitted. The record of the examiner's hearing was before the Board, and the Board also heard testimony of many who spoke at the earlier hearing. The Board ultimately denied the rezone, adopting the hearing examiner's findings of fact and conclusions of law. The Belchers come to us following the Superior Court's affirmance of the Board's action.[2]

The Belchers contend that the Board's decision was arbitrary and capricious, and that its procedures violated both a Kitsap County ordinance and the appearance of fairness doctrine. We hold that the decision was not arbitrary and capricious, that the Board followed proper procedures, and that the appearance of fairness doctrine does not apply to this case.

We review rezoning decisions under the arbitrary and capricious standard. *Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978). An administrative decision is arbitrary and capricious only if it is made without consideration of and in disregard of facts. *Maranatha Mining, Inc. v. Pierce Cy.,* 59 Wn. App. 795, 804, 801 P.2d 985 (1990). In the consideration of a rezone application: (1) there is no presumption favoring the rezoning; (2) the rezone proponents must prove that conditions have substantially changed since the original zoning; and (3) the rezone must bear a substantial relationship to the public health, safety, morals, or welfare. *Parkridge v. Seattle,* 89 Wn.2d at 462.

The Belchers claims initially that their proposed project conformed to the Kitsap Area Subplan, and that the Board erred in its conclusion of law that the project was inconsistent with plan policies related to density of single–family residential housing in Semi–Urban areas. We disagree.

---

[2]Our review is of the record before the Board, and we do not rely on the Superior Court's findings of fact and conclusions of law. *Balser Inv., Inc. v. Snohomish Cy.,* 59 Wn. App. 29, 795 P.2d 753 (1990); *Grader v. Lynnwood,* 45 Wn. App. 876, 728 P.2d 1057 (1986).

While it is true that the Semi–Urban designation permits densities as high as R–30, the examiner here attached to her decision an excerpt from the Central Kitsap Subarea Plan, entitled "Discussion," that states:

> In this [semi–urban] designation a large range of densities and types of dwelling units will be encouraged. Residential development is typified by single–family housing of four to eight units per acre. The Semi–Urban area will also include some higher density developments in the range of 8 to 30 units per acre where services, amenities and natural factors allow. It is important that residential developments in Semi–Urban areas provide amenities which offset possible adverse impacts of high density living.

In view of this announced policy of residential development typified by densities of four to eight units per acre, and the fact that the properties adjacent to the Belchers' were zoned R–3 and R–5, while the Belchers requested an R–18 density, we cannot say that the conclusion was arbitrary and capricious. On the contrary, it was related to the County's policies. *See State ex rel. Standard Mining & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 330, 510 P.2d 647 (1973) (once city has adopted comprehensive plan, it should be guided by it in its zoning regulations).

The Belchers also contend that the Board erred in concluding that they failed to show a substantial change in circumstances since the original zoning. The County concedes that the area has changed over the years. It is undisputed, however, that the properties immediately adjacent to the Belchers are zoned no higher than R–5. It was entirely appropriate for the commissioners to look to the zoning of such immediately adjacent properties. *See, e.g., Colella v. King Cy.,* 14 Wn. App. 247, 539 P.2d 693 (1975), *review denied,* 87 Wn.2d 1001 (1976). Although, there is an R–12 development diagonally across Fairgrounds Road from the Belchers' property, its mere existence does not make the Board's decision to deny an R–18 rezone arbitrary and capricious.

We also agree with the Board's conclusion that the Belchers did not demonstrate that the rezone bears the necessary substantial relationship to the public health, safety, or morals. That conclusion is amply supported by findings 10 through 14, which speak not only to the traffic concerns on Fairgrounds Road but also to whether the project is compatible with existing zoning.[3]

The Belchers next claim that the Board violated Kitsap County Ordinance 100, which establishes procedures for certain land use decisions, by relying primarily on a synopsis of the testimony prepared by the hearing examiner whose recommendation they are considering. This argument fails for at least two reasons.

First, the argument ignores the fact that the Board conducted a de novo public *hearing* under KCO 100.6.h, so that it heard much of the same testimony that the examiner heard. Also, it received written comments for a period of time after the hearing. We can hardly agree that the Board relied primarily on the examiner's synopsis.

■■ Further, its procedure was proper even assuming that the Board reached its decision at a public *meeting* under KCO 100.6.g. Subsection (3) of that provision requires that the decision be based on the record brought up from the examiner, and it specifies that the meeting is

---

[3] "10. The majority of residential development of a density greater than 5 dwelling units per acre in the general vicinity is located east of Central Valley Road.

"11. Fairgrounds Road, west of Central Valley Rd. [where Belchers' property is located] has very limited pedestrian use. The south side is paved and the north side is gravelled.

"12. The subject property was zoned R–3 in 1983 and had the same or similar zoning designation previously since 1977.

"13. The Central Kitsap Subarea Plan provides for a maximum of 30 dwelling units per acre in both urban and semi–urban areas. In semi–urban areas, residential development is to be generally typified by single–family housing of 4 to 8 units per acre, with some higher density developments of 8 to 30 units per acre where services, amenities and natural factors allow.

"14. Fairgrounds Road, north of the subject property, is a heavily travelled road and is congested at various times of the day and during large events at the Kitsap County Fairgrounds property."

not de novo. The facts here show that the record before the Board contained an audiotape of the testimony given before the examiner. The Belchers merely make an unsubstantiated allegation that the Board failed to listen to the tape. Members of the Board are presumed to have considered the record prior to making the decision, however, and it is sufficient if a member has available for consideration the substance of the hearing being reviewed. *Messer v. Snohomish Cy. Bd. of Adj.*, 19 Wn. App. 780, 792, 578 P.2d 50 (1978); *West Slope Comm'ty Coun. v. Tacoma*, 18 Wn. App. 328, 337, 569 P.2d 1183 (1977), *review denied*, 89 Wn.2d 1016 (1978).[4]

Finally, the Belchers claim that the Board's decision–making procedure violates the appearance of fairness doctrine. The doctrine protects against decisionmakers who are actually biased or have a pecuniary interest in the proceedings. *Keever v. LEOFF Retirement Bd.*, 34 Wn. App. 873, 878, 664 P.2d 1256 (1983). The doctrine applies to quasi–judicial local land use decisions. RCW 42.36.010.

The doctrine does not apply in this case. The Belchers based their contention on a review of 3½ years of minutes from Board meetings. That review led to the unremarkable discovery that the commissioner in whose area of the county the property is located presents the issue to the Board and makes a motion for the decision. In almost every case, the other two vote with that commissioner. This pattern shows no violation of the appearance of fairness doctrine. The test for a violation is

> Would a disinterested person, having been apprised of the totality of a board member's *personal* interest in a matter being acted upon, be reasonably justified in thinking that partiality may exist?

(Italics ours.) *Swift v. Island Cy.*, 87 Wn.2d 348, 361, 552 P.2d 175 (1976) (commissioner voting on preliminary plat was board chairman of bank interested in project). The Belchers' research shows only the natural interest of the

---

[4]We note, too, that nothing in the pertinent county ordinance prohibits the examiner from preparing a synopsis.

resident commissioner in decisions affecting property in his area of responsibility. The Belchers have not demonstrated any personal or pecuniary interest on the part of any of the commissioners. Therefore, they have not demonstrated the applicability, much less the violation, of the appearance of fairness doctrine.

The Belchers are really arguing that the commissioners' voting pattern implies that two of the commissioners vote without having exercised independent judgment. Were that demonstrated, the decision reached would be arbitrary and capricious, made without consideration of and in disregard of facts, *Maranatha Mining, Inc.*, 59 Wn. App. at 804. The Belchers have, however, proved nothing of the sort.

Affirmed.

ALEXANDER and MORGAN, JJ., concur.