[No. 30821-1-I.   Division One.   July 19, 1993.]

LOUANN FREEBURG, ET AL, *Appellants,* v. THE CITY
OF SEATTLE, ET AL, *Respondents.*

*David A. Bricklin, David S. Mann,* and *Bricklin & Gend-
ler,* for appellants.

*Mark H. Sidran, City Attorney,* and *Miriam Reed* and *Phil-
lip Brenneman, Assistants; Roger M. Leed,* for respondents.

FORREST, J. — Appellants LouAnn and Fred Freeburg
appeal the superior court decision affirming a Seattle hear-
ing examiner's (Examiner) decision to grant Patricia Atter-
berry's request for a variance to the height restriction on

her residential lot, contending the evidence does not support the Examiner's conclusion that the variance criteria were satisfied. We affirm, finding the Examiner's decision is supported by substantial evidence.

## FACTUAL BACKGROUND

Patricia Atterberry purchased an irregularly shaped piece of real estate on the southeast slope of Magnolia in 1983. The property is at the east end of West Plymouth Street, overlooking Elliott Bay. The property slopes steeply (at a grade exceeding 60 percent) from its northern frontage on West Plymouth Street to the south and east. The elevation of the northwest corner of the property is 97 feet, and the southeast corner elevation is 71 feet. The lowest elevation on the southern edge of the lot is 30 feet. The bottom (southern) portion of the lot is zoned for single family construction, but is not accessible. The top portion of the lot is zoned Lowrise 2, and is accessible from the platted, but unconstructed end of West Plymouth Street, which is at an elevation of approximately 97 feet. Lowrise 2 (L2) is a multifamily residential zone. The zone limits the height of any part of structures to 25 feet, and does not provide a "height bonus" for development of steep slopes.[1]

Atterberry submitted required building and site plans to the Seattle Department of Construction and Land Use (DCLU) in her application for a master use permit in 1990. The plans as submitted required a variance from the open space requirements, and the 25-foot height limitation of the L2 zone. It is essential to an understanding of this dispute that in an L2 zone the 25-foot height limit applies not only to the street facade but follows the topography down the hill. So a house meeting the 25-foot limit at the street would need to slope down sharply to follow the slope of the ground to meet the height limit at all points.

As proposed, Atterberry's house would contain three bedrooms and two baths, for a total of 1,900 square feet on three levels. The proposal calls for the house to be set back

---

[1] Seattle Municipal Code 23.45.009(A).

13 feet from the north property line, which would give the top floor roof a 108-foot elevation, and the second floor roof a 98-foot elevation. The street-facing facade would conform to the height limitation of the L2 zone; but the lower portion of the east, west and south sides of the house would not. If the house were moved farther uphill, to within 9.5 feet of the property line, the structure would still conform to the setback requirement, but the roof elevation would be slightly higher than as proposed, and would thus block more views.

LouAnn and Fred Freeburg (hereafter, collectively Freeburg) own two apartment buildings on the north side of West Plymouth Street. The street is developed with a mix of multifamily and single-family homes, all of which are at least one story above the street.

Freeburg opposed the height variance claiming that the proposed construction would block the view of Elliott Bay from their properties. Freeburg further argued that even if the variance was granted, no portion of the structure should exceed the elevation of West Plymouth Street. A real estate broker who did not testify at the hearing stated in a letter to Freeburg that the value of his properties' views is $165,000.

Land use specialist Mark Johnson of DCLU reviewed the plans and solicited comments from neighborhood residents. The director of DCLU granted Atterberry's variance request, conditioned on a 3 foot 3 inch height decrease.[2] Freeburg appealed the decision to the City of Seattle, and the appeal was heard by a City Hearing Examiner.

The Examiner heard testimony from Freeburg, Atterberry, Mark Johnson, a soils expert, an architect, and concerned neighbors. In sum, the Examiner determined that all the conditions required to grant a variance were present. The Examiner granted Atterberry's height variance request, conditioned on construction not exceeding an elevation of

---

[2] The director also made a determination of nonsignificance pursuant to the State Environmental Policy Act of 1971, RCW 43.21C, and granted a variance to the open space requirements. Neither of these issues has been appealed to this court.

104 feet 9 inches. This was 3 feet less than requested by Atterberry, and gave Atterberry the choice of meeting the limit by moving down the slope or reducing ceiling heights.

Freeburg filed a writ of certiorari in the superior court, which affirmed the Examiner's decision. Freeburg appeals that decision.

STANDARD OF REVIEW

■ Clearly, the review of the Hearing Examiner's decision pursuant to the writ of certiorari is governed by RCW 7.16-.120:

> The questions involving the merits to be determined by the court upon the hearing are:
> (1) Whether the body or officer had jurisdiction of the subject matter of the determination under review.
> (2) Whether the authority, conferred upon the body or officer in relation to that subject matter, has been pursued in the mode required by law, in order to authorize it or to make the determination.
> (3) Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator.
> (4) Whether there was any competent proof of all the facts necessary to be proved, in order to authorize the making of the determination.
> (5) Whether the factual determinations were supported by substantial evidence.

Surprisingly, in face of the explicit language of subsection (5), Atterberry and the City contend that the inquiry before this court is whether the Examiner's decision is arbitrary and capricious. They are incorrect. The respondents rely on cases decided under the prior statutory language[3] which are now of limited, if any, precedential value.[4] The substantial

---

[3]Prior to 1989, subsection (5) of the statute provided: "If there was such proof, whether there was, upon all the evidence, such a preponderance of proof, against the existence thereof, rendered in an action in a court, triable by a jury, as would be set aside by a court, as against the weight of evidence." Former RCW 7.16.120(5).

[4]*Lewis v. Medina*, 87 Wn.2d 19, 548 P.2d 1093 (1976); *Anderson v. Island Cy.*, 81 Wn.2d 312, 501 P.2d 594 (1972); *Balser Invs., Inc. v. Snohomish Cy.*, 59 Wn. App. 29, 795 P.2d 753 (1990) (applied prior law); *R/L Assocs., Inc. v. Klockars*, 52 Wn. App. 726, 763 P.2d 1244 (1988), *review denied*, 112 Wn.2d 1021 (1989); *Martel v. Vancouver*, 35 Wn. App. 250, 666 P.2d 916 (1983).

evidence test is well understood in the law and should be applied to review a hearing examiner's decision in a similar manner as the review of a decision of a trial judge sitting without a jury. There is a plain and important distinction between the statutory "substantial evidence" standard and the "arbitrary and capricious" standard applied by case law under the prior statutory language.[5]

In view of the statutory language the proper standard seems beyond dispute.[6] Nonetheless, references to the "arbitrary and capricious" continue to appear, perhaps because the new statutory language was not called to the courts' attention.[7]

▪ We hold the correct standard of review of legal issues is de novo under the contrary to law standard.[8] Factual issues are reviewed under the substantial evidence test of RCW 7.16.120(5). "Substantial evidence" is defined as "evidence which 'would convince an unprejudiced, thinking mind of the truth of the declared premise.' " *Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 486, 805 P.2d 800 (1991) (citing *Cowsert v. Crowley Maritime Corp.*, 101 Wn.2d 402, 405, 680 P.2d 46 (1984)). This factual review is deferential, and requires us to view

the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed in the highest

---

[5]Under the previous statute, case law held that subsection (4) and former subsection (5) together encompassed "essentially, the arbitrary and capricious standard used in nonwrit cases." *Murphy v. Seattle*, 32 Wn. App. 386, 390, 647 P.2d 540 (1982).

[6]*Lejeune v. Clallam Cy.*, 64 Wn. App. 257, 263, 823 P.2d 1144, *review denied*, 119 Wn.2d 1005 (1992).

[7]In *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992), the court refers to "arbitrary and capricious" at page 617 but then proceeds to apply the "substantial evidence" review at page 622. In *Concerned Land Owners v. King Cy.*, 64 Wn. App. 768, 772, 827 P.2d 1017, *review denied*, 119 Wn.2d 1008 (1992), the court, relying on *Bay Indus., Inc. v. Jefferson Cy.*, 33 Wn. App. 239, 241, 653 P.2d 1355 (1982), a preamendment case, states without discussion that the standard of review is arbitrary and capricious.

[8]RCW 7.16.120(3).

forum that exercised fact-finding authority, a process that necessarily entails acceptance of the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.

*State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992). Here, the Examiner was the highest forum to exercise fact-finding authority and thus this court's review is based on the record before the Examiner; we view the evidence and draw inferences in light of the Examiner's conclusion.[9]

The decision of the Superior Court is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SCHOLFIELD and BAKER, JJ., concur.

---

[9]*Concerned Land Owners*, 64 Wn. App. at 772.