[No. 33781-5-I.    Division One.    July 24, 1995.]
RICK BJARNSON, *Appellant*, v. KITSAP COUNTY, ET AL., *Respondents*.

---

*John C. Merkel, Philip King*, and *Gerald A. Kearney*, for appellant.

*Gary T. Chrey* and *Shiere Kamps & Chrey; Linda B. Clapham, Glenn J. Amster* and *Lane Powell Spears Lubersky;* and *Russell D. Hauge, Prosecuting Attorney*, and *Douglas B. Fortner, Deputy*, for respondents.

WEBSTER, J. — Rick Bjarnson appeals the dismissal of his challenge to a rezone and Planned Unit Development (PUD). He claims the Board of Kitsap County Commissioners violated county ordinances and state law; and that the record supports denial of the rezone and PUD. Kitsap Citizens for Fair Government (KCFG) appeals the dismissal of its challenge to the rezone, alleging genuine issues of material fact precluded summary judgment. We affirm.

## FACTS

The Board of Kitsap County Commissioners (Board) approved a rezone and PUD for a regional shopping center near Kingston in North Kitsap County. The proposed rezone is at the intersection of State Highway 104 and Hansville Road, known locally as George's Corner. The Board's action was the culmination of a lengthy administrative review process that began in 1988 with the filing of the original application. The Kitsap County Hearing Examiner recommended denial, July 26, 1991. The Board approved the rezone and PUD, January 11, 1993.

Bjarnson appeals, claiming the Board violated county ordinances and state law and the record supports denial of the rezone and PUD. KCFG challenged the appearance of fairness of the hearings and alleged due process violations concerning the activities of one of the county commissioners, John Horsley. The County moved for stay and remand to hold another hearing without Horsley's participation. The court ruled the County had the inherent power to conduct a new hearing, but denied the stay.

To remove the taint of the appearance of fairness allegations, two members of the three-member Board reheard the application and issued a second decision approving the rezone and PUD, July 19, 1993.

KCFG filed a motion to amend its complaint to challenge the new decision. Following deposition testimony from the two county commissioners who made the new decision, the court denied the motion to amend. The court granted the county's motion for a partial summary judgment and dismissed KCFG's appearance of fairness doctrine and due process claims. The court then affirmed the decision of the Kitsap County Commissioners, and dismissed the complaint. Bjarnson and KCFG appeal.

A

Bjarnson claims the Board, in making its decision, violated RCW 36.70.970 and Kitsap County Ordinance 128 by entering finding of facts and conclusions of law. He argues that the Board was acting as an appellate body and had no authority to substitute its judgment for that of the Hearing Examiner. He also contends the Kitsap County Code improperly combines appellate and final decision making functions.

> The general legal principles which apply to appeals from lower to higher courts do not apply to administrative review of administrative determinations. The scope and nature of an administrative appeal or review must be determined by the provisions of the statutes and ordinances which authorize them.

*Chaussee v. Snohomish County Council*, 38 Wn. App. 630, 639, 689 P.2d 1084 (1984).

RCW 36.70.970 allows the county the option of creating a land use hearing examiner system, and to treat decisions of the hearing examiner as either recommendations or as final decisions subject to appeal. Kitsap County Ordinance 128 clearly states that on rezones and PUD's "[t]he recommendation of the hearing examiner is a rec-

ommendation only and the decision with respect to the application shall be made by the BOARD." (emphasis added.) K.C. Ord. 128 § 6.e.(4) (codified at Kitsap County Code 2.60.040 (1993)). Thus, the Hearing Examiner's decision on rezones and PUD's are recommendations. The matter is automatically transferred to the Commissioners for decision. K.C. Ord. 128.6.e.(4); *see Belcher v. Kitsap County*, 60 Wn. App. 949, 951 n.1, 808 P.2d 750 (1991).[1]

The county ordinance requires the Board to prepare and publish findings of fact and conclusions of law when deciding rezone and PUD applications. The Board can either prepare its own findings and conclusions or adopt those prepared by the hearing examiner. K.C. Ord. 128 § 6.j.(2). It follows that the Board has the authority to modify or reverse the recommendations of the hearing examiner.

Thus, even though the county code denominates the action as an appeal, the effect of an appeal to the Board is that the party is asking the Board to not accept the Hearing Examiner's recommendation. K.C. Ord. 128 § 6.g., h. Bjarnson's appeal was not a judicial appeal. *Belcher*, 60 Wn. App. at 952. Here, there is no improper combination of legislative and decision-making functions. The Board was not acting as an appellate body; it had authority to substitute its judgment for that of the hearing examiner. The Board acted within its power to enter findings and conclusions.

## B

■ Bjarnson also claims there was no substantial change in circumstance justifying the rezone. Review of a writ of certiorari is governed by RCW 7.16 and is on the record before the final decision maker. *Chaussee*, 38 Wn. App. at 636. The standard of review for legal issues is de novo. RCW 7.16.120(3). We conduct a deferential review of factual issues under the substantial evidence test. Substan-

---

[1]Considering a previous but similar ordinance. The ordinance did not use the word appeal; the court noted that the county used that term in its proceedings. *Belcher*, 60 Wn. App. at 951 n.1.

tial evidence is "evidence which 'would convince an un-prejudiced thinking mind of the truth of the declared premise.' " RCW 7.16.120(5); *Freeburg v. Seattle*, 71 Wn. App. 367, 371, 859 P.2d 610 (1993) (quoting *Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 486, 805 P.2d 800 (1991)). We view

> the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority, a process that necessarily entails acceptance of the fact-finder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.

*Freeburg*, 71 Wn. App. at 371-72, quoting *State ex rel. Lige & Wm B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992). The following general rules apply to rezone applications:

> (1) there is no presumption of validity favoring the action of rezoning; (2) the proponents of the rezone have the burden of proof in demonstrating that conditions have substantially changed since the original zoning; . . . (3) the rezone must bear a substantial relationship to the public health, safety, morals or welfare.

*Parkridge v. Seattle*, 89 Wn.2d 454, 462, 573 P.2d 359 (1978).

The Board adopted the Hearing Examiner's findings 1 through 12, and made additional findings. It found that the proposed rezone and PUD were consistent with the County's Comprehensive Plan and the North Kitsap Subarea Plan (NKSAP). The NKSAP specifically provides for a future regional shopping center at George's Corner. The Draft Environmental Impact Statement notes that the shopping center's proposed location is consistent with NKSAP policies GC-1, 4, 5 & 7.

The rezone applicants and Kitsap County assert that a showing of changed circumstances is not required where the rezone implements an adopted comprehensive plan. *Save Our Rural Environment v. Snohomish County*, 99

Wn.2d 363, 370-71, 662 P.2d 816 (1983); *see Murden Cove Preservation Ass'n v. Kitsap County*, 41 Wn. App. 515, 522-23, 704 P.2d 1242 (1985) (in addition to substantial changed circumstances, change to comprehensive plan justified rezone). Bjarnson contends that *SORE* is inapplicable because the Kitsap County comprehensive plan was not modified to accommodate changed circumstances.

In *SORE*, the court found that substantial changed circumstances were documented in the county's amendment to its comprehensive plan. The court's alternate holding concurred with the Hearing Examiner's conclusion that the substantial change rule does not apply where the rezone implements the comprehensive plan. SORE, 99 Wn.2d at 370. The court adopted the Hearing Examiner's rationale that:

> If such implementation were not allowed to occur until physical or developmental circumstances in the area had changed, the new comprehensive plan might never be fulfilled: if an area is presently undeveloped and a newly amended comprehensive plan calls for industrial development, no industrial development may occur until at least one industrial rezone has been granted.

*SORE*, 99 Wn.2d at 370.

■ *SORE*'s alternate holding applies here. The area is zoned R 2.5. Practically no commercial development and no shopping center can be built until a rezone is granted. Kitsap County Code § 17.08.010; Return of Writ, Vol. 8, HE's Decision at 1. The NKSAP anticipates future commercial development at George's Corner. We hold that where the proposed rezone and PUD implements policies of the comprehensive plan, changed circumstances are not required.

■ Moreover, there were sufficient changed circumstances to justify the rezone. In applying the changed circumstances test courts have looked at a variety of factors,

including: changed public opinion,[2] changes in land use patterns in the area of the rezone,[3] and changes on the property itself.[4] After concluding that no change in circumstance need be demonstrated, the Board nevertheless concluded there were changed circumstances justifying the rezone. The Board found that "[t]he North Kitsap area has been one of the fastest growing areas of Kitsap County in the past ten years. Since adoption of the NK-SAP, there has been substantial growth in population with a commensurate increase in demand for commercial services." We conclude that the area has experienced a growth increase of approximately fifty percent from 1980 to 1990, exceeding the growth projections of the NKSAP. From 1984 to 1991 ferry traffic into Kingston also increased by almost sixty percent.[5] Traffic at George's Corner also increased. In 1982, approximately 2,660 vehicles per day traveled on Hansville Road north of George's Corner. By 1989, this figure had increased to 4,520 vehicles per day. Evidence suggested that Kingston retail businesses were not satisfying the demand for services in the area. The ability of other North Kitsap communities to accommodate additional commercial development is extremely limited.[6] The Board's decision to grant the rezone was justified.

---

[2] *Parkridge,* 89 Wn.2d at 462.

[3] *Bassani v. Board of County Comm'rs for Yakima County,* 70 Wn. App 389, 394, 853 P.2d 945, *review denied,* 122 Wn.2d 1027 (1993).

[4] *Bassani,* 70 Wn. App. at 394-95.

[5] Another study put the growth between 1987 and 1991 at 25.8 percent. Ltr. Gibson Traffic Consultants, at 2.

[6] "There are nine communities in North Kitsap. Hansville has some business commercial areas, but there is no available land. Driftwood Keys has a small business commercial zone which is not large enough for the George's Corner development. At Port Gamble there is some vacant land which is zoned business commercial, but that precludes a supermarket and is not the right zoning. At Lofall, there is no commercial zoning or any parcel of the appropriate size for this development." S.R., H.E. Recommendation summarizing the testimony of Jim Lindsay, at 11.

## C

KCFG claims genuine issues of material fact existed as to whether there had been a violation of the appearance of fairness doctrine. It argues that Commissioner Horsley violated the appearance of fairness doctrine and due process by having ex parte communications during the pendency of the rezone. KCFG contends the Board's rehearing could not cure the taint on the process.

The appearance of fairness statute prohibits any member of a decision-making body from engaging in ex parte communications with opponents or proponents on a matter pending before the body. RCW 42.36.060. However, even if all of the members of a decision-making body are disqualified on the basis of the appearance of fairness, the body may act where participation is necessary to obtain a quorum and the member or members disclose publicly the basis for disqualification. RCW 42.36.090.

 The only alleged improper conduct was by Horsley.[7] KCFG contends Commissioners Granlund and Eder were irretrievably tainted by Horsley's conduct. Nevertheless, the requirements of RCW 42.36.060 were met when the Board held an entirely new hearing. Horsley's conduct was a matter of public record and he did not participate in the rehearing. The remaining members of the Board were entitled to act.[8]

Further, Bjarnson testified that he had absolutely no basis for suspecting any impropriety on the part of Commissioners Granlund and Eder. Indeed, Bjarnson's deposition testimony reveals that neither Bjarnson nor Horsley had any reason to suspect bias or the appearance of bias on the part of Granlund or Eder.

---

[7]KCFG contends Commissioner Horsley detailed the decision the Board would hand down several months later, promised Bjarnson that he would delay the project for five years, and assured the project applicants and property owners that the project would be approved before purchase of the property.

[8]Cases cited by KCFG for the proposition that the conduct of one member may "infect" the action of the whole Board were all decided prior to the enactment of RCW 42.36.090 in 1982.

KCFG asserts that the following deposition testimony shows Commissioner Eder was biased:

Q. So you may have been influenced by your first decision?

A. I could have been. I told you I don't know how many times I have felt it is a good project based on what had been presented. Nothing has changed my mind.

This testimony shows nothing more than Eder thought the project was a good one, based on presentations to the Hearing Examiner and the Board. The fact that the Kitsap staff prepared findings of fact, and that they may have conferred with Horsley in their initial drafting, does not alter the fact that substantial evidence supports the Board's findings.[9]

We affirm.

BECKER, J., and PEKELIS, J. Pro Tem., concur.

---

[9]KCFG claims the court erred in denying its petition to amend its complaint to include the new decision made without the participation of commissioner John Horsley. We do not address this issue because in view of our decision on the appearance of fairness issue it would not have made any difference.