[No. 19204-1-III. Division Three. March 1, 2001.]

AHMANN-YAMANE, L.L.C., *Appellant*, v. MICHAEL REX TABLER, ET AL., *Respondents*.

104

*Robert B. Gould* (of *Law Offices of Robert B. Gould*), for appellant.

*David A. Thorner* and *Bryan G. Evenson* (of *Thorner, Kennedy & Gano, P.S.*), for respondents.

SCHULTHEIS, J.[1] — Ahmann-Yamane, L.L.C.'s (Ahmann's) attorney, Michael Tabler, filed an untimely petition for review of a county board of commissioners (Board) land use ruling, and filed it in the wrong county's superior court. The petition was dismissed for lack of jurisdiction. Ahmann's suit against Mr. Tabler for legal malpractice was dismissed on summary judgment. On appeal to this court, Ahmann argues that if not for Mr. Tabler's negligence, the superior court would have reversed the Board ruling that denied its application for a rezoning of its property. Because we find that the superior court would not have granted Ahmann's

---

[1] Judge Schultheis is no relation to the party Richard E. Schultheis of Schultheis & Tabler.

land use petition, we affirm dismissal of the legal malpractice claim.

Ahmann owns about 165 acres of property northwest of Moses Lake. The land, zoned agricultural, was used by tenant farmers to grow alfalfa hay. In January 1998, Ahmann filed an application with the Grant County Planning Commission for a zone change from agricultural to "Suburban-1." Property zoned Suburban-1 could be divided into residential lots of one to three acres. Ahmann's property was outside the interim urban growth area (IUGA) established by the Board pursuant to the Growth Management Act (GMA). The Board's standard for housing density outside the IUGA is 2.5-acre lots. Ahmann's application requested a zone change to Suburban-1, but with a minimum lot size of 2.5 acres.

The planning commission held a public meeting on the rezone application in March 1998. Ahmann, represented by Michael Ahmann, attended the meeting with Ahmann's attorney, Mr. Tabler. After hearing expert testimony and comments from the public, the commission recommended denial of the zone change. In May 1998, the Board held a closed record public meeting on the rezone application, adopted the commission's recommendation, and denied the application. Notice of the Board's decision was mailed to Ahmann on May 27. The next day, Mr. Tabler sent Ahmann a letter confirming that it had 21 days from the issuance of the notice to file a land use petition in superior court challenging the Board's decision. Ahmann did not respond.

On June 17, 1998, the twenty-first day after the Board's decision was issued, Mr. Tabler happened to see Mr. Ahmann on a golf course. Mr. Ahmann asked him to file a land use petition. Recognizing he had three additional days to file because the Board's notice had been mailed, Mr. Tabler agreed to file the petition and proceeded. Due to a scheduling backlog in Grant County, Mr. Tabler decided to file in another county. He filed the land use petition in Adams County on June 19. The superior court subsequently granted Grant County's motion to dismiss the petition for

lack of jurisdiction (violation of the filing requirements of RCW 36.01.050).

Ahmann sued Mr. Tabler for legal malpractice, claiming that the attorney's negligent filing of the petition more probably than not prevented an ultimate granting of the rezone application. Mr. Tabler's motion for summary judgment dismissal of the malpractice suit was granted and Ahmann now appeals.

■■ As this is a review of a summary judgment, we undertake the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. CR 56(c); *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Legal malpractice is a negligence action that seeks to show that (1) there was an attorney-client relationship that gave rise to a duty of care, (2) the attorney breached that duty by an act or omission, (3) the breach damaged the client, and (4) the breach was the proximate cause of the client's damages. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). The attorney's standard of care is that degree of skill, diligence, and knowledge commonly possessed and exercised by reasonable, careful, and prudent attorneys in the jurisdiction. *Id.* at 261.

Mr. Tabler is undisputedly the attorney for Ahmann. Consequently, the first question presented is whether Mr. Tabler breached the standard of care when he allegedly failed to file the petition in a timely manner or in the proper forum. Mr. Tabler explained in his declaration that he notified Mr. Ahmann that Ahmann had until June 17 to file a land use petition challenging the Board's ruling. Mr. Ahmann did not respond until the afternoon of June 17, and only after Mr. Tabler happened to run into him socially. Although Mr. Ahmann contends in his declaration that he discussed the petition on more than one occasion with Mr. Tabler, he admits that the cost of the land use appeal— estimated by Mr. Tabler at over $14,000—prevented him from making a unilateral decision to go ahead. As he stated,

"I told [Mr. Tabler] that he was the attorney, and 'you're the guy I'm paying to advise me, and I have to exhaust all the possibilities. I've got two other guys I have to answer to. We've got a lot of money in this thing now.'" Clerk's Papers (CP) at 45. Mr. Ahmann does not dispute Mr. Tabler's assertion that the decision to file the land use petition was not made until June 17, on the golf course.

By statute, the land use petition must be filed in superior court within 21 days of the issuance of the land use decision. RCW 36.70C.040(2), (3). Three days are added to the time period if the written decision is mailed to the parties. RCW 36.70C.040(4)(a). Because the Board's decision denying the rezone application was mailed, Mr. Tabler actually had until June 20 to file the petition. He filed it on June 19, but in the wrong county. According to his declaration, he decided to file in a neighboring county because Grant County routinely filed affidavits of prejudice against one of its two superior court judges in civil cases involving the county. Expecting a delay, he chose to file in Adams County under the authority of former RCW 36.01.050 (1963) (actions against any county may be commenced in the superior court of the adjoining county). Unfortunately, he did not know that RCW 36.01.050 had been amended in 1997 to provide that actions against a county can be commenced only in that county or in the nearest two judicial districts. According to the record, the nearest two judicial districts in this case would have been Chelan and Kittitas Counties. A reasonably prudent attorney would be expected to know all applicable procedural rules. Consequently, Mr. Tabler's violation of statute in attempting to file the land use petition constituted a breach of duty to Ahmann.

Whether this breach caused harm to Ahmann is the pivotal question in this appeal. We are concerned only with cause in fact, the "but for" consequences of Mr. Tabler's negligent act. *Daugert v. Pappas*, 104 Wn.2d 254, 257-59, 704 P.2d 600 (1985). Under the "but for" test the plaintiff must establish that the attorney's act or omission caused the plaintiff's damages. *Id.* at 260. This showing must be

based on more than speculation. *Id.* Ahmann contends Mr. Tabler's untimely filing in the improper county caused dismissal of what would have been a successful reversal of the Board's denial of its rezone application. To prove legal malpractice in an action involving an attorney's failure to file an appeal in a timely manner, the client must show that the appellate tribunal would have rendered a judgment more favorable to the client. *Id.* at 258. This is a question of law, requiring review of the record of the underlying action and the arguments of the parties, and subject to the rules of review that would have been applied by the appellate court. *Id.* at 259 (citing RONALD E. MALLEN & VICTOR B. LEVIT, LEGAL MALPRACTICE § 583, at 738 (2d ed. 1981)). In short, we must decide the likely result of the land use petition.

Under RCW 36.70C.130(1), the superior court, acting without a jury, reviews the record of a land use decision and grants relief only if one of the following six standards has been met:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

The land use petition erroneously filed by Ahmann challenged several of the Board's findings and conclusions, including findings that the 165 acres were suitable for farming, that there was no demonstrated substantial

change supporting a rezone, and that there was no proof of a need for additional residential tracts in the area; and conclusions that the rezone was not consistent with the comprehensive plan, that it was incompatible with irrigated agricultural use, and that it was outside the IUGA. Although Ahmann does not cite which standards of review under RCW 36.70C.130 it seeks to apply, the challenge to the findings and conclusions suggests it attacks the land use decision on the basis of insufficient evidence (RCW 36.70C.130(1)(c)) and clearly erroneous application of the law to the facts (RCW 36.70C.130(1)(d)).

■■■■■ Under the substantial evidence standard used in RCW 36.70C.130(1)(c), we look for sufficient evidence in the record to persuade a reasonable person that the declared premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). This review of the factual issues is deferential, however. The evidence and reasonable inferences arising from the evidence are viewed in the light most favorable to the party who prevailed in the highest fact-finding authority. *Bjarnson v. Kitsap County*, 78 Wn. App. 840, 845, 899 P.2d 1290 (1995) (citing *Freeburg v. City of Seattle*, 71 Wn. App. 367, 371-72, 859 P.2d 610 (1993)). Further, an appellate court will overturn a governmental body's decision on a rezone only if the decision is arbitrary and capricious. *Murden Cove Pres. Ass'n v. Kitsap County*, 41 Wn. App. 515, 519, 704 P.2d 1242 (1985). An action is arbitrary and capricious if it is willful and unreasoning, without consideration of or in disregard of facts and circumstances; it is not arbitrary and capricious if there is room for two opinions. *Id.* (citing *Barrie v. Kitsap County*, 93 Wn.2d 843, 850, 613 P.2d 1148 (1980)).

■■■ In examining rezone applications, the governmental body applies the following general rules:

> "(1) there is no presumption of validity favoring the action of rezoning; (2) the proponents of the rezone have the burden of proof in demonstrating that conditions have substantially changed since the original zoning; [and] (3) the rezone must bear a substantial relationship to the public health, safety, morals or welfare."

*Bjarnson*, 78 Wn. App. at 845 (quoting *Parkridge v. City of Seattle*, 89 Wn.2d 454, 462, 573 P.2d 359 (1978)).

Ahmann first challenges the Board's finding that the record does not demonstrate a substantial change of conditions in the area since the original zoning. Courts look at a variety of factors when applying the changed circumstances test, including changed public opinion, changes in local land use patterns, and changes on the property itself. *Bjarnson*, 78 Wn. App. at 846-47. At the public hearing before the planning commission here, several neighbors and interested citizens dissented to the rezone. Ahmann contends public opposition is not a proper basis to deny a rezone application, and adds that some local people favored the project. Because changes in public opinion have a bearing on changed circumstances, the Board properly considered the testimony of all of the citizens. The court's authority to weigh the testimony of these citizens and to accept the opinion of the dissenters must be accepted. *Id.* at 845.

Ahmann also points to the fact that property to the north and south is zoned suburban-agricultural and suburban. Directly to the east and west, however, lie agricultural lands, including orchards. Although it was undisputed that the area had become more residential over the last 25 years, nothing conclusively indicated that the additional homes reflected a substantial change in the pattern of land use.

An important consideration in determining land use patterns is the effect of the county's comprehensive plan. Any zoning designations must be consistent with the comprehensive plan. *City of Bellevue v. E. Bellevue Cmty. Council*, 138 Wn.2d 937, 940, 983 P.2d 602 (1999). In fact, if a proposed rezone implements the policies of a comprehensive plan, a showing of changed circumstances is not required. *Save Our Rural Env't v. Snohomish County*, 99 Wn.2d 363, 370-71, 662 P.2d 816 (1983); *Bjarnson*, 78 Wn. App. at 846. Grant County's comprehensive plan states as

one of its objectives the preservation of the county's agricultural land: "Because of economic and environmental considerations, this is the most important consideration[] of this Comprehensive Plan." CP at 105. Clearly Ahmann's proposed rezone would not implement the policy of preservation of agricultural land. And just as clear is the fact that the comprehensive plan is instrumental in determining what land use patterns will be acceptable within the county.

As for evidence that Ahmann's property had changed, there was testimony before the planning commission that the property was poorly suited for agricultural use. The chief reasons cited were that the irrigation system needed improvement and that it was expensive to remove the numerous rocks. The rocks had always existed on the property, and the condition of the irrigation system was not an indication that the land itself had changed. Altogether, the record before the Board, especially when viewed by the deferential standard, substantially supports the Board's finding that there was no substantial change in circumstances warranting a rezone.

 Our final concern is whether the proposed rezone bears a substantial relationship to the public health, safety, morals, or welfare. *Bjarnson*, 78 Wn. App. at 845. The Board found that the record does not establish that "the proposed rezone from Agriculture to Suburban-1 bears a substantial relationship to the public welfare, in that the proposed rezone and the proposed development is not compatible with irrigated/agricultural." CP at 124. At the time Ahmann applied for the rezone, Grant County had adopted a comprehensive plan and interim zoning requirements pursuant to the GMA. The Legislature in adopting the GMA found "that uncoordinated and unplanned growth, together with a lack of common goals expressing the public's interest in the conservation and the wise use of our lands, pose a threat to the environment, sustainable economic development, and the health, safety, and high quality of life enjoyed by residents of this state." RCW 36.70A.010.

Counties of a certain size were required to adopt comprehensive plans under the GMA and to create development regulations designating IUGAs. RCW 36.70A.040, .070, .110; *Wenatchee Sportsmen*, 141 Wn.2d at 173-74. Grant County's comprehensive plan includes a section entitled "Irrigated Farming," which sets forth four objectives consistent with the purposes of the GMA. Besides the preservation of agricultural land and avoidance of leapfrog development (residential development scattered through agricultural areas), the comprehensive plan also seeks to preserve open spaces for recreational purposes and to maintain low population density except in specific areas.

Ahmann failed to present sufficient evidence that the planned rezone from agricultural to suburban was in the best interests of the public. Especially when balanced against the goals of the GMA and the objectives for irrigated farm land contained in the comprehensive plan, Ahmann's proposed rezone offers little more than the opportunity for "rural living" in an area that would rapidly become urban in character. Public dissenters worried that the rezone would lead to increased traffic on inadequate roads and cause an impact on wildlife, water quality, and agriculture in the area. Viewed in the light most favorable to Grant County, the evidence is sufficient to support the Board's finding that Ahmann failed to show that the proposed rezone had a substantial relationship to public health, safety, morals, or welfare. The evidence substantially supports the Board's decision to deny the rezone. RCW 36.70C.130(1)(c).

Ahmann's argument that the Board's decision is a clearly erroneous application of the law to the facts (RCW 36.70C.130(1)(d)) is based on Mr. Tabler's argument at the summary judgment hearing that *Association of Rural Residents v. Kitsap County*, 95 Wn. App. 383, 974 P.2d 863 (1999), *aff'd in part, rev'd in part*, 141 Wn.2d 185, 4 P.3d 115 (2000), defeats any appeal of the rezone denial. *Rural Residents*, 95 Wn. App. at 396, held that an approved planned unit development violated the GMA because it

allowed development "urban in nature" to occur outside the county's IUGA. Mr. Tabler argued that Ahmann's property was outside the IUGA, the planned development was clearly urban in nature, and therefore the rezone could not be approved without violating the GMA. Ahmann notes that *Rural Residents* was reversed by the Supreme Court. The Court of Appeals decision was reversed because the development application vested to the zoning laws in effect when the application was filed, and because the IUGA was not in effect at that time, the former land use ordinance should have been applied. 141 Wn.2d at 192. The Supreme Court did not, however, hold that the GMA and the IUGA are improper standards for land use approval or denial. On the contrary, it repeated that " 'a land use application, under the proper conditions, will be considered only under the land use statutes and ordinances in effect at the time of the application's submission.' " *Id.* at 193 (quoting *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 275, 943 P.2d 1378 (1997)).

The Board properly applied the objectives of the GMA (the proposed rezone would contribute to "urban sprawl"), the coverage of the IUGA (the proposed rezone is outside the IUGA), and the elements of the comprehensive plan ("[t]he proposal is inconsistent with Grant County's Comprehensive Plan") in denying Ahmann's rezone application. CP at 125-26. Because Ahmann cannot show that the Board's decision was arbitrary and capricious—on the contrary, the record shows a careful, deliberate process was followed in reaching the decision—we cannot find that the land use petition would have been granted by the superior court, overturning the denial of the rezone. *Murden Cove Pres. Ass'n v. Kitsap County*, 41 Wn. App. 515, 519, 704 P.2d 1242 (1985). Accordingly, Ahmann fails to prove that dismissal of the petition caused damages. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). The trial court properly granted summary judgment to Mr. Tabler.

Affirmed.

BROWN, A.C.J., and KATO, J., concur.

Review denied at 144 Wn.2d 1011 (2001).