100 P.3d 842 (2004)
Jerry and Verl HENDERSON, Christine Charbonneau, and David and Diane Lepsig, Appellants,
v.
KITTITAS COUNTY, and Institute of Northwest Passages, Inc., Respondents.
No. 22603-4-III.
Court of Appeals of Washington, Division 3, Panel Seven.
November 16, 2004.
Reconsideration Denied December 16, 2004.
*843 James A. Grutz, Attorney at Law, Seattle, WA, for Appellants.
Jeffrey D. Slothower, Attorney at Law, James E. Hurson, Kittitas County Prosecuting Attorney's Office, Ellensburg, WA, for Respondent.
SCHULTHEIS, J.
The Institute of Northwest Passages, Inc. (INP) applied for rezoning of over 100 acres of land in Kittitas County from forest and range land with minimum 20-acre lots to agricultural land with minimum 3-acre lots. The board of county commissioners (board) adopted an ordinance approving the rezone. Several neighboring landowners petitioned for review to the superior court, which affirmed. On appeal, the neighboring landowners contend the rezone does not comply with state law or the county code. We disagree and affirm.

FACTS
Jerry and Verl Henderson, Christine Charbonneau, and David and Diane Lepsig (hereafter the Hendersons) own parcels of land in an area of Kittitas County zoned "forest and range" in chapter 17.56 Kittitas County Code (KCC). The purpose of this zone is to provide areas in the county where "natural resource management is the highest priority." KCC 17.56.010. Minimum lot sizes in this zone are 20 acres, and permitted uses include agriculture, forestry, mining, excavation, and single family residences. KCC 17.56.020, .040. INP owns 100.52 acres of land in the same forest and range zone.
Across the highway from INP and the Hendersons are zones labeled AG-3 and AG-20: agricultural zones of minimum 3-acre and 20-acre lots. Another area zoned AG-3 lies southeast of the parcels owned by INP and the Hendersons. The purpose of the AG-3 zone "is to provide for an area where various agricultural activities and low density residential developments co-exist compatibly." KCC 17.28.010. Permitted uses include agriculture, livestock, forestry, and any use permitted in the residential or suburban zones. KCC 17.28.020.
*844 In February 2003, INP applied for a rezone of its 100.52 acres from forest and range to AG-3. Notice of INP's application was published in the local newspaper and a public hearing before the county planning commission was scheduled for April 2003. The Hendersons and other interested parties testified they were concerned that increased density and development of the INP land would create a fire hazard and lower their property values. Roger Weaver, authorized agent for INP, testified the actual lots would be somewhere between 5 and 10 acres each. Noting that this area is designated "Rural" in the county comprehensive plan, the planning commission found that the rezone is consistent with the comprehensive plan and the surrounding zoning. Clerk's Papers (CP) at 156. The commission also found that the rezone satisfied the six relevant rezoning criteria found in KCC 17.98.020. Ultimately the commission voted three to two to recommend approval of the rezone by the board.
On June 17, 2003, the board approved the rezone by county ordinance 2003-07. The Hendersons filed a petition for review to the superior court on June 27. After oral argument in November 2003, the trial court affirmed the decision of the board to rezone INP's land from forest and range to AG-3. The Hendersons timely appealed to this court.

REZONING
Review of a land use decision is governed by the Land Use Petition Act (LUPA), chapter 36.70C RCW. City of Univ. Place v. McGuire, 144 Wash.2d 640, 647, 30 P.3d 453 (2001). Relevant to this appeal, the Hendersons sought to establish that the board's decision was not supported by sufficient evidence or was clearly erroneous. Id.; RCW 36.70C.130(1)(c), (d).[1] "Errors of law are reviewed de novo." McGuire, 144 Wash.2d at 647, 30 P.3d 453. In determining the sufficiency of the evidence, we view the record and the inferences in the light most favorable to the party that prevailed in the highest fact-finding forum. Benchmark Land Co. v. City of Battle Ground, 146 Wash.2d 685, 694, 49 P.3d 860 (2002). Consequently, we view the record in the light most favorable to INP. We will find that the board made a clearly erroneous application of law only if we are left with the firm conviction that it made a mistake.[2]Lakeside Indus. v. Thurston County, 119 Wash.App. 886, 894, 83 P.3d 433 (2004), review denied (Wash. Oct. 6, 2004). On review of a superior court's decision on a land use petition, we stand in the same position as the superior court and apply the above standards to the record created before the board. Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 751, 49 P.3d 867 (2002); Lakeside, 119 Wash.App. at 893, 83 P.3d 433.
The proponent of a rezone must show a substantial change in circumstances since the last zoning and that this change justifies a rezone for the public health, safety, morals, or general welfare. Parkridge v. City of Seattle, 89 Wash.2d 454, 462-63, 573 P.2d 359 (1978); Tugwell v. Kittitas County, 90 Wash. *845 App. 1, 8, 951 P.2d 272 (1998). Additionally, Kittitas County requires the rezoning proponent to establish the following criteria:
a. The proposed amendment is compatible with the comprehensive plan; and
b. The proposed amendment bears a substantial relation to the public health, safety or welfare; and
c. The proposed amendment has merit and value for Kittitas County or a sub-area of the county; and
d. The proposed amendment is appropriate because of changed circumstances or because of a need for additional property in the proposed zone or because the proposed zone is appropriate for reasonable development of the subject property; and
e. The subject property is suitable for development in general conformance with zoning standards for the proposed zone; and
f. The proposed amendment will not be materially detrimental to the use of properties in the immediate vicinity of the subject property; and
g. The proposed changes in use of the subject property shall not adversely impact irrigation water deliveries to other properties.
KCC 17.98.020(5).
The Hendersons contend INP failed to establish changed circumstances; a substantial relationship to the public health, safety, morals, or general welfare of the community; or any of the six relevant criteria of KCC 17.98.020(5). (Requirement g of KCC 17.98.020(5) is not applicable because INP's property is not in an irrigation district.) They contend the findings adopted in the ordinance are not supported by substantial evidence or are inadequate to support the requirements for a rezone. Additionally, they assign error to the superior court's findings and conclusions. Because our review is of the board's decision, the superior court's findings are irrelevant on appeal. Isla Verde, 146 Wash.2d at 751, 49 P.3d 867. The findings and conclusions of the board, although they do not always specifically cite the requirements of KCC 17.98.020(5), adequately address the factual disputes raised at the hearing. Hayden v. City of Port Townsend, 28 Wash.App. 192, 195, 622 P.2d 1291 (1981). As noted in Hayden, at 195, 622 P.2d 1291, too much formality in the adjudication of zoning matters would unduly complicate these proceedings. The findings adopted in the ordinance, considered with the evidence before the board, provide this court sufficient record for review.
I. Changed circumstances. Generally the proponent of a rezone must show a substantial change in circumstances since the last zoning or amendment unless the proposed rezone implements policies of the comprehensive plan. Bjarnson v. Kitsap County, 78 Wash.App. 840, 846, 899 P.2d 1290 (1995). A variety of factors may indicate a substantial change in circumstances, including changes in public opinion, in local land use patterns, and on the property itself. Id. at 846-47, 899 P.2d 1290.
Evidence presented by INP indicated that its property had been used for grazing for decades and had been logged in prior years. At one time, only 20-acre parcels existed in the area. From 1990 to 1992, the zoning was changed to allow one-acre lots in the forest and range area. The zoning was changed back to 20-acre parcels in 1992. Due to the changes in zoning, several parcels in the area were smaller than 20 acres. Development on these lots around INP's property reportedly interfered with its marketability as a private retreat. Based on this evidence, the planning commission found that "[t]he proposed amendment is appropriate because of changed circumstances due to the fact that once the area was used as a cattle ranch grazing area and over a period of time residential areas have grown up around it." CP at 143. The board found that the property's lack of harvestable timber and the fact that it had not been designated a resource land of long-term commercial significance demonstrated a change of circumstances supporting the rezone to AG-3.
The testimony and the findings indicate changes in local land use patterns from largely agricultural to residential on diverse sizes of lots. These changes reportedly affected *846 the marketability and use of INP's property. Several owners of neighboring properties, including the Hendersons, testified in opposition to the rezone and asserted the smaller lot sizes would reduce wildlife in the area, create more fire hazards, and lower property values. Although the Hendersons claim this testimony proves that there has been no substantial change in circumstances in the area of INP's property, "neighborhood opposition alone may not be the basis of a land use decision." Tugwell, 90 Wash.App. at 9, 951 P.2d 272. Viewed in the light most favorable to INP, the evidence supports a substantial change in circumstances since the last rezone.
Additionally, the rezone appears to implement policies of Kittitas County's comprehensive plan. In a section entitled "Current Land Use PatternsA Review of Existing Zoning," the plan reveals a concern with the effects of large rural lots:
The aforementioned range of rural densities and uses has created and contributed to a successful landscape which contributes to an attractive rural lifestyle. The exception to this landscape can be seen in areas where individuals have had to acquire larger lots than desired in order to obtain a building site. This has created the effect of "rural sprawl."
CP at 429. In its introduction to the rural lands section, the comprehensive plan further describes the problem:
State planners are concerned about "urban sprawl" with less than five acre minimum lot sizes. However, over the past fifteen to twenty years Kittitas County has experienced "rural sprawl" through the adoption of 20 acre minimum lot sizes, which has caused the conversion of farm land into weed patches. Small lot zoning with conservation easements for agriculture, timber, or open space may be preferable to the wasteful "sprawl" developments of large lot zoning and could be more conducive to retaining rural character.
CP at 428. Because the proposed rezone here from forest and rural 20-acre minimum lot sizes to agricultural 3-acre minimum lot sizes implements the express policy of the comprehensive plan, this fact alone would justify the rezone. Bjarnson, 78 Wash.App. at 846, 899 P.2d 1290.
II. Public health, safety, morals, or general welfare. The above substantial change in circumstances (or implementation of the policies of the comprehensive plan) must justify a rezone for public health, safety, morals, or general welfare. Parkridge, 89 Wash.2d at 462-63, 573 P.2d 359. The planning commission admitted some difficulty in understanding this requirement and continued its public hearing on the rezoning petition in order to seek legal advice on this issue. Eventually the commission concluded that smaller parcels on INP's land would result in more tax money to provide additional services to the area, such as fire and police protection.
In the ordinance, the board appears to find that the rezone meets the public health, safety, morals, or general welfare requirement because the rezone will have no immediate adverse impact on the area and any future development will have to comply with standards for construction, road building, and water rights. However, more than a finding of no adverse impact is required. The rezone must "bear a substantial relationship to the public health, safety, morals, or welfare." Schofield v. Spokane County, 96 Wash.App. 581, 587, 980 P.2d 277 (1999). More tax money to provide additional services to the community is a benefit to the public health, safety, and welfare. The primary benefit of the rezone, however, is that it furthers the goals of the comprehensive plan to increase diverse uses of rural county lands and to decrease "rural sprawl." CP at 428. Viewed in its entirety, the record supports the board's finding that the proposed rezone has a substantial relation to the public health, safety, and welfare.
III. Criteria of KCC 17.98.020(5). Citing the opposition testimony of neighboring landowners, the Hendersons contend INP failed to satisfy the six relevant criteria of KCC 17.98.020(5). Most of the criteria deal with the general requirements of changed circumstances; compatibility with the comprehensive plan; value to Kittitas County; and a substantial relationship with *847 public health, safety, or welfare. KCC 17.98.020(5)(a)-(d). As discussed above, INP presented evidence to meet these first four criteria. The fifth criterion is also met here. There is no real dispute that INP's property is suitable for development in conformance with the AG-3 zone, which permits any residential and customary agricultural use. KCC 17.28.020; KCC 17.98.020(5)(e).
Finally, there is insufficient evidence that the rezone will "be materially detrimental to the use of properties in the immediate vicinity." KCC 17.98.020(5)(f). Although the neighboring landowners opined that rezoning INP's property to three-acre minimum lot sizes would reduce privacy as well as water and sewer resources, most of this testimony concerned prospective development of the property. As noted in Tugwell, 90 Wash.App. at 11-12, 951 P.2d 272, the issue at hand is the application for a rezone, not for approval of a subdivision. "Examination of the potential impacts [of a development] at this point necessarily would be speculative.... [T]here is simply nothing to consider, because there are no specific plans to review and the impacts are therefore unknown." Id. at 12, 951 P.2d 272. In their reply brief, the Hendersons respond that the immediate effect of this increase in lot density is haphazard use by new landowners with trailers, campers, and temporary shelters people who are unable or unwilling to install septic systems or to obtain building permits. Not only is this assertion speculative, but it is unsupported by evidence in the record.
The fact that the Hendersons are unable to show that the rezone will be immediately detrimental to the use of neighboring properties also undermines their claim that the rezone is an illegal spot zone. Spot zoning is an action by which an area is carved out of a larger area and specially zoned for a use totally different from, and inconsistent with, the surrounding land and not in conformance with the comprehensive plan. Save a Neighborhood Env't v. City of Seattle, 101 Wash.2d 280, 286, 676 P.2d 1006 (1984). A spot zone grants a discriminatory benefit to some landowners to the detriment of their neighbors or of the community at large. Id. (quoting Save Our Rural Env't v. Snohomish County, 99 Wash.2d 363, 368, 662 P.2d 816 (1983)). Here, properties to the north and the southeast of INP's land are already zoned AG-3. And it has been shown that rezoning INP's property as AG-3 is consistent with the policies of the comprehensive plan. Accordingly, the rezone is not an illegal spot zone.
For the above reasons, we conclude that the record, considered in the light most favorable to INP, supports the board's decision to grant the proposed rezone from 20-acre minimum forest and range to AG-3.

ATTORNEY FEES
INP requests attorney fees on appeal pursuant to RCW 4.84.370, which mandates fees to the prevailing party who appeals a decision by a town, city, or county to issue or deny a development permit involving a site-specific rezone. The prevailing party must have substantially prevailed before the county or city and in all prior judicial proceedings. As in Tugwell, 90 Wash.App. at 15, 951 P.2d 272, this case involves a rezoning, not a development permit, so RCW 4.84.370 is not applicable. Further, a LUPA appeal does not give rise to attorney fees. Schofield, 96 Wash.App. at 590, 980 P.2d 277. Consequently, the request for attorney fees is denied.
Affirmed.
WE CONCUR: KATO, C.J., and Kurtz, J.
NOTES
[1] In a review of a land use decision, the party seeking relief must show that at least one of the following standards has been met:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1).
[2] To obtain relief from a land use decision, it is no longer necessary to show that the decision was arbitrary and capricious. RCW 36.70C.130(2) (enacted 1995); Tugwell v. Kittitas County, 90 Wash.App. 1, 13, 951 P.2d 272 (1998). This court in Ahmann-Yamane, L.L.C. v. Tabler, 105 Wash.App. 103, 111, 19 P.3d 436 (2001) incorrectly applied the arbitrary and capricious standard to a land use decision reached after enactment of RCW 36.70C.130(2). To the extent that Ahmann-Yamane applied the incorrect standard of review, it is overruled.