# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE CITY OF SEATTLE, a municipal corporation,

    Respondent,

    v.

FREDERICK A. KASEBURG, an individual; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; BANK OF AMERICA, N.A., a Delaware corporation; and KING COUNTY, a subdivision of the state of Washington,

    Appellants.

THE CITY OF SEATTLE, a municipal corporation,

    Respondent,

    v.

KEITH L. HOLMQUIST, an individual and Personal Representative of the Estate of Kay A. Burdine; HEIRS OF KAY A. BURDINE, deceased and Keith L. Holmquist; J.P. MORGAN CHASE & CO., successor-in-interest to WASHINGTON MUTUAL BANK, a Delaware corporation; and KING COUNTY, a subdivision of the state of Washington,

    Appellants.

DIVISION ONE

No. 76204-4-I

UNPUBLISHED OPINION

FILED: March 26, 2018

DWYER, J. — Frederick Kaseburg and Keith Holmquist appeal from the trial court's order entering findings of public use and necessity, determination of required notice, and setting discovery deadlines. On appeal, Kaseburg and Holmquist contend that the trial court erred by failing to find that the City of Seattle violated their due process rights, the Open Public Meetings Act of 1971[1] (OPMA), and the appearance of fairness doctrine by adopting an ordinance authorizing condemnation of their property. Kaseburg and Holmquist also contend that the trial court erred by failing to find that the City's conduct was arbitrary and capricious. Finding no error, we affirm.

I

Frederick Kaseburg and Keith Holmquist (collectively the Appellants) own waterfront property located at the end of NE 130th Street in Seattle (the Property). The Property was platted in the early 1920s and was commonly used as a community beach for decades. In 2012, the Appellants filed a quiet title action against King County. The court granted summary judgment in favor of the Appellants and the City appealed, filing a notice of supersedeas without bond. We affirmed. Holmquist v. King County, 182 Wn. App. 200, 328 P.3d 1000 (2014) (Holmquist I). Following our resolution of that case, the Appellants moved the trial court to award damages resulting from the City's decision to supersede the judgment quieting title. The trial court denied their motion. We reversed. Holmquist v. King County, 192 Wn. App. 551, 368 P.3d 234 (2016) (Holmquist II).

_____

[1] Ch. 42.30 RCW.

Following Holmquist I, community advocates began to contact the Seattle City Council (Council) and express concern over the loss of their community beach. Some community members asked the Council to take action and secure the Property for community use through eminent domain. Community advocates arranged for some council members to visit the Property, tour the beach, and meet with other members of the community who supported the City's acquisition of the beach.

While Holmquist II was pending in this court, Kaseburg's fiancée, Pepper Schwartz, e-mailed council member Nick Licata to express her disapproval of any potential acquisition of the Property. Frank Video, a legislative aide to council member Licata, replied to Schwartz. Video informed Schwartz that, until the ongoing litigation between the Appellants and the City was concluded, the Council was advised not to communicate further with the Appellants. Video advised Schwartz to direct any further communication to the City's legal department.

On June 8, 2015, during a council meeting that was open to the public, all of the council members discussed and signed a letter to the mayor expressing their support for the acquisition of the Property.

> Over the past several months, the City Council has received numerous inquiries from concerned residents of northeast Seattle about the N.E. 130th Street beach on Lake Washington . . . .
>
> The N.E. 130th Street beach had offered the only public access to the northern end of Lake Washington in a 5.5 mile span stretching from Matthews Beach in the south to Log Boom Park in the north.
>
> We believe the N.E. 130th Street beach provided an important public benefit for at least 83 years. And we believe the City should

use its power of eminent domain to acquire this beach property and restore the public access that previously existed. We also believe that this property should be acquired for public park purposes under the jurisdiction of the City's Department of Parks and Recreation, identified as a public park and maintained as such.

We appreciate that you have begun exploring the option of acquiring the two properties involved though condemnation. We look forward to learning the City's progress in pursuing eminent domain and moving forward with the acquisition of this property for the public's use.

Thereafter, the City's Department of Parks and Recreation prepared Ordinance No. 124864 (the Ordinance). The Ordinance authorized the superintendent of the department to "acquire, through negotiation or condemnation, [the Property] for open space, park, and recreation purposes."

On September 1, 2015, the City sent the Appellants a "Notice of Seattle City Council Final Action to Adopt an Ordinance Authorizing Condemnation (Eminent Domain)" of the Property (the Notice). The Notice informed the Appellants that the Council would be voting on an ordinance authorizing the acquisition of the Property and that the City would be taking public comment on September 15, 2015. The Notice stated that the Appellants would be provided with an opportunity to comment on the Ordinance in person and that they could also submit comments in writing to the committee chair. The Notice also informed the Appellants when the Council would be taking final action on the Ordinance:

Final Action

Should the Parks, Seattle Center, Libraries and Gender Pay Equality Committee pass the Council Bill on to the City Council, the ordinance authorizing condemnation of your property will be presented for final action (adoption) to the Seattle City Council on

- 4 -

Monday September 21 at 2:00 p.m., in the City Council Chambers . . . . After approval of the ordinance the City of Seattle will be authorized to acquire your property through voluntary negotiation or it may use its powers of eminent domain to condemn your property.

On September 15, 2015, the committee approved sending the Ordinance to the Council. On September 21, 2015, the Council voted to approve the Ordinance. The mayor signed the legislation eight days later. On August 12, 2016, the City filed its petition for eminent domain in the superior court. Following a hearing, the trial court found that the City had provided the Appellants with proper notice, that the City's acquisition of the Property was for a public use, and that the acquisition was necessary to serve that public use. The trial court also found that the City had not violated the Appellants' due process rights, the OPMA, or the appearance of fairness doctrine, and that the City's conduct was not arbitrary or capricious.[2]

II

The Appellants do not directly dispute the trial court's findings of public use and necessity. Rather, they rely on a series of collateral attacks on the order. Each is addressed in turn.

A

The Appellants first contend that the trial court erred by finding that the City had not violated their constitutional due process rights. The Appellants assert that the council members "pre-decided" to condemn the Property prior to

---

[2] The trial court incorporated its oral findings into its written order.

holding a public hearing on the Ordinance, thus depriving them of notice and a meaningful opportunity to be heard. We disagree.

Article I, section 3 of the Washington Constitution provides, "No person shall be deprived of life, liberty, or property, without due process of law." A deprivation is a "direct and adverse effect." Wenatchee Reclamation Dist. v. Mustell, 102 Wn.2d 721, 725, 684 P.2d 1275 (1984). "It is not a theoretical harm, nor is it an increased probability of harm." Carlisle v. Columbia Irrig. Dist., 168 Wn.2d 555, 568, 229 P.3d 761 (2010). "Even if a deprivation becomes more likely as a result of government action, due process does not apply if an actual deprivation is contingent on a subsequent action." Carlisle, 168 Wn.2d at 568.

"Before the judicial process for condemnation may begin, a city must adopt an ordinance authorizing the condemnation." Pub. Util. Dist. No. 2 of Grant County v. N. Am. Foreign Trade Zone Indus., LLC, 159 Wn.2d 555, 565, 151 P.3d 176 (2007) (NAFTZI) (citing RCW 8.12.040). Pursuant to RCW 8.12.030, cities are authorized to condemn land and property for, among other uses, public parks. "Once an entity with the power of eminent domain makes its initial determination to authorize a condemnation action of private property, the matter moves to the superior court for the condemnation, which involves the court determining public use and necessity, fixing the amount of just compensation, and transferring title." NAFTZI, 159 Wn.2d at 565 (citing In re Seattle Popular Monorail Auth., 155 Wn.2d 612, 629, 121 P.3d 1166 (2005)).

In a condemnation proceeding, a property owner's due process rights are not implicated until the judicial process commences. NAFTZI, 159 Wn.2d at 570-

-6-

71. The adoption of an ordinance authorizing condemnation "does not result in a taking of property and does not deprive a property owner of any rights." NAFTZI, 159 Wn.2d at 570. "Even if the resolution is approved, the condemnation action may or may not go forward. The actual condemnation action does not occur until the judicial hearing." NAFTZI, 159 Wn.2d at 570-71. Thus, prior to the judicial proceeding, property owners suffer "no deprivation cognizable under the law of due process." Carlisle, 168 Wn.2d at 569.

In 2007, the legislature enacted certain notice requirements for the adoption of condemnation ordinances, codified at RCW 8.25.290. Pursuant to that statute, a condemnor must provide notice to property owners before "tak[ing] a final action to authorize the condemnation of a specific property." RCW 8.25.290(1)(a). This notice must include a description of the property and the "date, time, and location of the final action at which the potential condemnor will decide whether or not to authorize the condemnation of the property." RCW 8.25.290(2)(a)(ii). "Final action" means "a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance." RCW 8.25.290(4)(a); RCW 42.30.020(3).

Here, the City provided the Appellants with notice of the date, time, and location of the final action, thus complying with the notice requirements set forth in RCW 8.25.290. The council members then voted to adopt the Ordinance. The adoption of the Ordinance authorized the City to file its petition for eminent domain but did not itself result in a deprivation. Accordingly, the adoption of the

Ordinance could not have violated the Appellants' due process rights. See NAFTZI, 159 Wn.2d at 570.

Nevertheless, the Appellants contend that the council members "pre-decided" to condemn the Property when they signed the June 2015 letter to the mayor and that such a decision constitutes a "final action" pursuant to RCW 8.25.290. Because they were not provided with notice or an opportunity to be heard before the council members took final action, the Appellants aver, they were deprived of constitutional due process.

As a preliminary matter, the council members' decision to support the *possibility* of condemnation—or "pre-deciding" as the Appellants characterize it— could not possibly constitute a "final action to *authorize the condemnation.*" RCW 8.25.290(1)(a) (emphasis added). This is so because the condemnation was not *authorized* until the Ordinance was adopted. The June 2015 letter to the mayor authorized no action whatsoever. It is entirely unremarkable that the council members would individually or collectively support condemnation at some point in time prior to setting a public hearing on the adoption of the Ordinance.[3] The council members did not take final action to authorize the condemnation by voicing their support for eminent domain prior to the adoption of the Ordinance.

In any event, even if the council members did collectively and conclusively agree to adopt the Ordinance by signing the June 2015 letter, such a decision

---

[3] Indeed, "'the election of legislators is often based on their announced views and attitudes on public questions.'" Harris v. Hornbaker, 98 Wn.2d 650, 657, 658 P.2d 1219 (1983) (quoting Smith v. Skagit County, 75 Wn.2d 715, 740-41, 453 P.2d 832 (1969)). "[S]uch a predisposition is an inherent part of the political process. Appellants' recourse is through the electoral process, not judicial review of the motives of one acting in a legislative capacity." Hornbaker, 98 Wn.2d at 661.

- 8 -

would not have violated the Appellants' constitutional due process rights. In 2010, three years following the enactment of RCW 8.25.290, our Supreme Court again considered due process protections during condemnation proceedings:

> It did not matter that a resolution authorizing condemnation was adopted at a public meeting before the judicial hearing, thus making condemnation more likely, because an adopted resolution "does not result in a taking of property and does not deprive a property owner of any rights."

Carlisle, 168 Wn.2d at 569 (quoting NAFTZI, 159 Wn.2d at 570). Notably, the court also recognized that due process does not require the government to provide individuals with notice and an opportunity to be heard at every decision making stage that ultimately results in a deprivation:

> Due process does not entitle a property owner to notice and a hearing on the decisions leading up to the [deprivation]. If notice and a hearing preceded every government action, government would be paralyzed. Government decision making is often a multistep process, with several intermittent stages between the start of the process and the final decision. It is not practicable or necessary for notice and hearing to accompany every stage.

Carlisle, 168 Wn.2d at 572.

Here, the City did not take final action to authorize the condemnation until the Council voted to adopt the Ordinance. Even then, the adoption of the Ordinance did not implicate the Appellants' constitutional due process rights. There was no error.

B

The Appellants next contend that the trial court erred by finding that the City had not violated the OPMA. This is so, they assert, because the council

members agreed to condemn the Property after conducting a "chain meeting" via e-mail that was not open to the public. We disagree.

The OPMA is intended to ensure that public bodies make decisions openly:

> The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.

RCW 42.30.010. The act is to be liberally construed. RCW 42.30.910.

Pursuant to the OPMA, "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter." RCW 42.30.030. A "meeting" is defined as "meetings at which action is taken." RCW 42.30.020(4). "Action" is defined as "the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." RCW 42.30.020(3).

Here, the Appellants contend that the City violated the OPMA by communicating via e-mail with members of the community. The Appellants assert that such communications constituted a "chain meeting" that was not open to the public. Br. of Appellants at 18. Alternatively, the Appellants contend that an open public hearing simply never occurred because the council members had pre-decided to condemn the Property before the public hearing on the Ordinance, as evidenced by the June 2015 letter to the mayor.

In support of their first proposition, the Appellants rely on <u>Wood v. Battle Ground School District</u>, 107 Wn. App. 550, 27 P.3d 1208 (2001). <u>Wood</u> concerned a number of e-mails regarding official board business sent between a quorum of the members of a school board. 107 Wn. App. at 565. Division Two of this court held that the OPMA's definition of "meeting" as "meetings at which action is taken" was broad enough to include the exchange of e-mails between members of a governing body. <u>Wood</u>, 107 Wn. App. at 563-64. The court stated that, in order for a violation of the OPMA to occur: (1) a majority of the governing body must meet, (2) all participants must collectively intend to transact official business, and (3) the participants must discuss issues that may or will come before the governing body for a vote. <u>Wood</u>, 107 Wn. App. at 564-65. Noting that "the active exchange of information and opinions in these e-mails, as opposed to the mere passive receipt of information, suggests a collective intent to deliberate and/or to discuss Board business," the court ruled that genuine issues of material fact remained concerning whether the e-mails constituted a meeting in violation of the OPMA. <u>Wood</u>, 107 Wn. App. at 566.

Here, unlike in <u>Wood</u>, there is no evidence of e-mails sent between a majority of the council members concerning official Council business. Rather, the e-mails upon which the Appellants rely were communications between individual council members and *members of the community*. Were the Appellants correct that such communications constitute a meeting, virtually all communications between council members and the public would constitute a meeting in violation of the OPMA.

The Appellants' alternative contention is likewise unpersuasive. As discussed herein, the council members signed the June 2015 letter to the mayor at a council meeting *open to the public*. That some or all of the council members may have "pre-decided" to sign the letter prior to the public meeting is of no moment. Similarly, the adoption of the Ordinance occurred at a meeting open to the public. The Appellants have produced no evidence of any meeting between council members subject to the OPMA that was not open to the public.

There was no error.

C

The Appellants next contend that the trial court erred by finding that the appearance of fairness doctrine does not apply in these circumstances. The Appellants assert that the adoption of a condemnation ordinance constitutes a quasi-judicial proceeding that must comply with the appearance of fairness doctrine. They are wrong.

The appearance of fairness doctrine was established to ensure fair hearings by legislative bodies. Raynes v. City of Leavenworth, 118 Wn.2d 237, 245, 821 P.2d 1204 (1992). "The doctrine requires that public hearings which are adjudicatory in nature meet two requirements: the hearing itself must be procedurally fair . . . and it must be conducted by impartial decisionmakers." Raynes, 118 Wn.2d at 245-46 (citing Smith v. Skagit County, 75 Wn.2d 715, 740, 453 P.2d 832 (1969); Buell v. City of Bremerton, 80 Wn.2d 518, 523, 495 P.2d 1358 (1972)). "The intent of the doctrine is to maintain public confidence in

quasi-judicial decisions made by legislative bodies." Harris v. Hornbaker, 98

Wn.2d 650, 658, 658 P.2d 1219 (1983).

The appearance of fairness doctrine was modified by the legislature in

1982 when it enacted chapter 42.36 RCW, "Appearance of Fairness Doctrine—

Limitations." Raynes, 118 Wn.2d at 246. That act provides, in pertinent part:

> Application of the appearance of fairness doctrine to local land use decisions shall be limited to the quasi-judicial actions of local decision-making bodies as defined in this section. Quasi-judicial actions of local decision-making bodies are those actions of the legislative body, planning commission, hearing examiner, zoning adjuster, board of adjustment, or boards which determine the legal rights, duties, or privileges of specific parties in a hearing or other contested case proceeding. Quasi-judicial actions do not include the legislative actions adopting, amending, or revising comprehensive, community, or neighborhood plans or other land use planning documents or the adoption of area-wide zoning ordinances or the adoption of a zoning amendment that is of area-wide significance.

RCW 42.36.010. The act further provides that "[n]o legislative action taken by a

local legislative body, its members, or local executive officials shall be invalidated

by an application of the appearance of fairness doctrine." RCW 42.36.030.

Our Supreme Court has announced four factors for courts to consider

when determining whether an action is quasi-judicial or legislative in nature:

> "(1) whether the court could have been charged with the duty at issue in the first instance; (2) whether the courts have historically performed such duties; (3) whether the action of the municipal corporation involves application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than a response to changing conditions through the enactment of a new general law of prosecutive application; and (4) whether the action more clearly resembles the ordinary business of courts, as opposed to those of legislators or administrators."

Harris v. Pierce County, 84 Wn. App. 222, 228, 928 P.2d 1111 (1996) (quoting Raynes, 118 Wn.2d at 244-45).

Here, applying the four factors, it is clear that the adoption of a condemnation ordinance is not a quasi-judicial act. Courts have no authority to adopt an ordinance authorizing condemnation and have not historically done so. Neither do courts authorize the expenditure of City funds for the benefit of the public. "Such policymaking decisions, which are based on the consideration of public opinion, are within the purview of legislative bodies, not courts of law." Harris, 84 Wn. App. at 229 (rejecting the contention that the city council's adoption of a master trail plan was a quasi-judicial act).

Nevertheless, the Appellants contend that the appearance of fairness doctrine applies to the adoption of condemnation ordinances. The Appellants cite to no authority holding that such hearings are quasi-judicial in nature or that the doctrine applies to the adoption of condemnation ordinances. Rather, they assert that the doctrine applies to hearings "of any sort," that are required by statute and affect individual property rights. Br. of Appellants at 19-21.

In support of their contention, the Appellants rely on the general principles articulated by our Supreme Court in Smith, 75 Wn.2d at 739-40. Smith concerned a statutory requirement that a public hearing be held prior to the amendment of a comprehensive zoning plan. 75 Wn.2d at 732-33. Noting that such hearings were "an integral part of the legislative process required by statute," the court held that the appearance of fairness doctrine applied. Smith, 75 Wn.2d at 733, 739-41.

The Appellants' reliance on Smith is misplaced. "Subsequent cases clarifying the applicability of the doctrine . . . have recognized that the rezoning of specific tracts is adjudicatory in nature, not legislative." Hornbaker, 98 Wn.2d at 659 n.2 (citing Fleming v. City of Tacoma, 81 Wn.2d 292, 301, 502 P.2d 327 (1972) (overruled on other grounds by Raynes, 118 Wn.2d 237)). "Thus, the statement in Smith is explained by the fact that the case preceded the adoption of the term quasi judicial to identify adjudicatory decisions by legislative bodies; it does not reflect an application of the doctrine to legislative decisions." Hornbaker, 98 Wn.2d at 659 n.2.

Smith did not extend the appearance of fairness doctrine to legislative hearings simply because they are required by statute.

> A statutory public hearing by a legislative body is not the talisman for invoking the appearance of fairness doctrine. If it were, we would unfairly constrain the Legislature in its attempt to provide opportunities for public participation in legislative decisions. If by requiring a public hearing the Legislature would implicitly force its subdivisions to adhere to a full panoply of adjudicatory safeguards, it might well decide to eliminate such hearings altogether. Prior cases should not be interpreted as indicating that a decision becomes quasi judicial and triggers the appearance of fairness doctrine by the mere fact that a hearing is required by statute.

Hornbaker, 98 Wn.2d at 660 (citing Polygon Corp. v. City of Seattle, 90 Wn.2d 59, 67-68, 578 P.2d 1309 (1978)).

The trial court did not err.[4]

---

[4] The other cases cited by the Appellants are likewise unpersuasive. Buell, 80 Wn.2d 518, Fleming, 81 Wn.2d 292, and Hayden v. City of Port Townsend, 28 Wn. App. 192, 622 P.2d 1291 (1981), all involved quasi-judicial actions related to rezoning decisions. Most important, all of these cases were decided before the enactment of RCW 42.36.010, which clarified which land use decisions were quasi-judicial and therefore subject to the application of the appearance of fairness doctrine. None of these cases suggest that the doctrine may be applied to legislative decisions or that hearings required by statute are necessarily quasi-judicial in nature.

D

Finally, the Appellants contend that the trial court erred by adopting the findings and conclusions in the Ordinance. This is so, they assert, because the City's adoption of the Ordinance was arbitrary and capricious. We disagree.

Following the adoption of an ordinance authorizing a condemnation action, the condemnor must file a petition in superior court requesting a decree of public use and necessity. RCW 8.12.050. The question of whether the use is "really a public use" is a judicial determination, whereas the question of necessity is a legislative determination. NAFTZI, 159 Wn.2d at 573, 575.

A legislative declaration of necessity is "conclusive in the absence of actual fraud or arbitrary and capricious conduct, as would constitute constructive fraud." Seattle Popular Monorail, 155 Wn.2d at 629. "A condemnation of private property is necessary if it is 'reasonably necessary' under the circumstances." NAFTZI, 159 Wn.2d at 576 (internal quotation marks omitted) (quoting Seattle Popular Monorail, 155 Wn.2d at 636 n.19). "Put another way, when there is a reasonable connection between the public use and the actual property, this element is satisfied. It need not be the best or only way to accomplish a public goal." Cent. Puget Sound Reg'l Transit Auth. v. Miller, 156 Wn.2d 403, 421, 128 P.3d 588 (2006). To establish fraud or constructive fraud in this setting, there must be evidence showing that "the public use was merely a pretext to effectuate

---

In any event, even if the doctrine did apply to the adoption of condemnation ordinances, the only basis for violation set forth by the Appellants is that the council members "pre-decided" to condemn the property, as evidenced by the letter to the mayor. But, as discussed herein, the letter to the mayor was signed at a meeting *open to the public*. That the individual council members may have decided to support condemnation at some point in time prior to that public meeting is of no significance.

a private use on the condemned lands." State ex rel. Wash. State Convention & Trade Ctr. v. Evans, 136 Wn.2d 811, 823, 966 P.2d 1252 (1998).

Where the trial court has already weighed the evidence supporting public necessity, we review the record to determine only whether the factual findings are supported by substantial evidence. Miller, 156 Wn.2d at 419. "Substantial evidence is viewed in the light most favorable to the respondent and is evidence that would 'persuade a fair-minded, rational person of the truth of the finding.'" Miller, 156 Wn.2d at 419 (quoting State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)).

Here, the appellants contend that (1) the adoption of the Ordinance was "arbitrary and capricious and fell short of due process—including the appearance of fairness" and that, therefore, "the judicial determination necessarily will also lack due process," Br. of Appellants at 25, (2) the adoption of the Ordinance was "tainted—or even illegal—because the City secretly met with advocates" and that, therefore, the appearance of fairness doctrine "must preclude giving 'great weight' to its determinations of public use and necessity," Br. of Appellants at 25, (3) "the trial court entered no substantive findings explaining why this may be 'really a public use' or why the existing waterfront 135th Street end is not satisfactory", Br. of Appellants at 26, and (4) the trial court erred by failing to enter substantive findings justifying its legal conclusions. Br. of Appellants at 27.

The Appellants first two assertions are predicated on their arguments that the adoption of the Ordinance violated constitutional due process and the appearance of fairness doctrine. As discussed herein, both of those contentions

are meritless. The adoption of a condemnation ordinance does not effectuate a deprivation and does not implicate due process. Neither does the adoption of a condemnation ordinance implicate the appearance of fairness doctrine, which does not apply to legislative actions. Accordingly, neither due process nor the appearance of fairness doctrine preclude the trial court from affording a legislative determination of necessity great weight.

The Appellants' latter two assertions are likewise unpersuasive. The Appellants cannot seriously dispute that a public park constitutes a public use. See RCW 8.12.030 (authorizing condemnation for a wide range of public uses, including "public parks"). The trial court found that a public park was a public use—no authority requires a more robust finding of public use. Neither was the trial court required to explain why an alternative location was not satisfactory. See Miller, 156 Wn.2d at 421 ("This court has explicitly held already that the 'mere showing' that another location is just as reasonable does not make the selection arbitrary and capricious."). Finally, the Appellants cite to no authority in support of their assertion that the trial court was required to make more robust factual findings. The trial court heard testimony, weighed evidence, and found that the acquisition of the Property for a public park was a public use and was necessary to serve that public use.[5] Those findings are supported by substantial evidence and sufficiently support the trial court's conclusions of law.

There was no error.

---

[5] Contrary to the Appellants assertion that "[n]owhere was fair consideration given to the facts relevant to the condemnees," Br. of Appellants at 26, the trial court gave fair consideration to all of the relevant facts when it heard testimony and weighed the evidence.

No. 76204-4-I/19

Affirmed.

We concur: